**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Earl JOHNSON, a/k/a Floyd D. Sanders,
Defendant-Appellant.**

**No. 73–1435.**

United States Court of Appeals,
Tenth Circuit.

Submitted Nov. 14, 1973.

Decided April 4, 1974.

George W. Materi, Shawnee Mission, Kan. (George W. Earnshaw, Shawnee Mission, Kan., on the brief), for defendant-appellant.

Monti Belot, Asst. U. S. Atty., Topeka, Kan. (Robert J. Roth, U. S. Atty., District of Kansas, and Glen S. Kelly, Asst. U. S. Atty. (Trial Attorney), with him on the brief), for plaintiff-appellee.

Before MURRAH, SETH *and DOYLE, Circuit Judges.

MURRAH, Circuit Judge.

Earl Johnson appeals from a judgment of conviction after a jury trial on a charge of selling heroin in violation of 21 U.S.C. § 841(a)(1). He first plead lack of specific intent, and entrapment by a bonus or "contingent fee" informer (*see, e. g.,* Maestas v. United States, 341 F.2d 493 (10th Cir. 1965)) who was not available at trial.

The jury was told:

Once the defense of entrapment is raised, the burden is on the government to prove beyond a reasonable doubt that the defendant was not entrapped.

If then the jury should find beyond a reasonable doubt from the evidence in the case that before anything at all occurred with respect to the alleged offense involved that the defendant was ready and willing to commit the crime charged whenever opportunity was afforded, and that law enforcement officers or their agents, including informers, did no more than offer the opportunity, then the jury should find that the defendant was not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit the offense charged, and did so only because he was induced or persuaded by the law enforcement officers or their agents, including informers, then it is your duty to acquit him.

No objections were made to these instructions and they therefore became the law of the case.[1]

The government's case was based on testimony by a narcotics agent that a paid informer had called his office to make arrangements for the agent to be introduced to Johnson and to purchase heroin from him. Pursuant to the arrangement, the agent went to the informer's house, was admitted by the informer, and escorted to a room where he negotiated with Johnson. Johnson delivered two packages to the agent, which were later proven to contain heroin, and received payment for them. The agent also testified that he inquired about the possibility of purchasing additional drugs in the future and that Johnson indicated a willingness to accommodate him. On cross-examination, the agent testified that he did not know how the heroin came into Johnson's possession and conceded that the informer was either an addict or an ex-addict.

In support of his defense of lack of specific intent, and entrapment, Johnson testified that he came from another city to collect a debt owed by the government informer; that the informer told him he had no money, but could acquire some with Johnson's assistance by the sale of "fake" heroin, and that the informer supplied the two packages which were delivered to the government agent. Johnson also contends that he had no prior involvement in the sale of drugs and that the informer was motivated to "frame" him due to the involvement of both men with the same girlfriend.

If, as Johnson testified, the informer provided the heroin which was sold to the undercover agent, we think the government would have been perilously close to what Justice Rhenquist conceived in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), as conduct so outrageous as to violate standards of due process.[2] However, absent any positive proof of the origin of the narcotics in question, we must focus on the issue of Johnson's intent and predisposition.

■■ Johnson testified that he was ready and willing to participate in the sale of only a fake powder. If the jury believed this testimony, in the context of the undisputed facts of the sale, Johnson would have been entitled to a verdict of acquittal for the lack of the necessary knowledge and intent to sell a controlled substance as required by 21 U.S.C. § 841(a). The case was submitted on Johnson's uncontradicted testimony to that effect but, by its verdict, the jury obviously chose to disbelieve him, as it was entitled to do. United States v. Saka, 339 F.2d 541, 543 (3d Cir. 1964). Cf. Masciale v. United States, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958); United States v. Workopich, 479 F.2d 1142 (5th Cir. 1973). Having disbelieved Johnson's testimony, the jury had sufficient evidence, including Johnson's offer to make future sales, to enable them to believe beyond a reasonable doubt that Johnson was "ready and willing" to sell heroin. This being so, we cannot say he was entrapped as a matter of law. See Martinez v. United States, 373 F.2d 810 (10th Cir. 1967).

■ Johnson's second contention on appeal is that he was denied his Sixth Amendment right to confrontation of witnesses due to the absence at trial of the informer. The facts are that, at

---

1. Rule 51 Fed.R.Crim.P.; Warden v. United States, 391 F.2d 747 (10th Cir. 1968). In these circumstances we have no occasion to consider whether these instructions conform to the prevailing law of this circuit prior to United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

2. Federal courts have shown grave concern over the government practice of providing narcotics to those who are, in turn, arrested for possessing or selling them. See United States v. Bueno, 447 F.2d 903 (5th Cir. 1971), and cases cited; United States v. Dillet, 265 F.Supp. 980 (S.D.N.Y.1966). Cf. United States v. Workopich, 479 F.2d 1142, 1144 (5th Cir. 1973); United States v. Abbadessa, 470 F.2d 1333, 1336 (10th Cir. 1972).

Johnson's request, the government agreed at the outset of the trial not to call the informer, since defense counsel had been unable to interview him. However, later in the trial, Johnson sought to call the informer, had the government issue a subpoena for him, received a continuance, and now complains, because the informer could not be found, that appellant is denied his Sixth Amendment right. This contention is wholly without merit. When defense counsel finally requested a subpoena, the government properly issued it and made a "reasonable effort" to locate the informer. United States v. Pollard, 483 F.2d 929 (8th Cir. 1973); United States v. Hayes, 477 F.2d 868 (10th Cir. 1973); United States v. Jenkins, 470 F.2d 1061, 1063 (9th Cir. 1972). It is indeed unfortunate that we are deprived of the testimony of the informer, who might have shed light on the critical fact of the origin of the heroin and on Johnson's testimony that he thought he was selling only a fake powder. But having failed to exercise due diligence to secure the informer's presence, Johnson cannot now complain of his absence.

 Johnson's final contention, and the ground for our reversal of his conviction, is that prejudicial evidence was admitted, over objection, concerning the circumstances of his arrest. On direct examination defense counsel asked Johnson:

> Have you ever been involved or convicted of . . . pled guilty to anything to do with dangerous drugs?

3. The government began to elicit Johnson's testimony, concerning the heroin found at the time of his arrest, by the following exchange:

Q. Now, you stated also on direct examination, I believe, that you never used or sold heroin or had anything to do with it or any kind of drugs.

A. I don't.

Although Johnson's answer was not precisely responsive to the question (which was not directed toward his *current* habits concerning heroin), the government did not pursue

Johnson responded:

> I have nowhere on my record of any indication or anything to do with drugs, anyplace.

Seeming to respond to this line of questioning, counsel for the government elicited testimony from Johnson [3] and the narcotics agent about heroin found in the bedroom of the house where Johnson was visiting a female companion when he was arrested three months after the offense charged in this case. The government did not establish Johnson's knowledge of the existence of the heroin at the time of his arrest or that he was in any way in possession or control of the premises. Nor is there any evidence of a sale of drugs or any other unlawful act by Johnson when he was taken into custody. Instead, the government contends that defense counsel "opened the door" to this inquiry, which, as the trial judge pointed out, would otherwise have been "clearly inadmissible." [4]

Federal courts have referred to the hostility based on the "general odium" of narcotics use and have approached that subject with concern for its potential to prejudice the jury. *See* United States v. Kearney, 136 U.S.App.D.C. 328, 420 F.2d 170, 174 (1969); *cf.* United States v. Coppola, 479 F.2d 1153, 1162 (10th Cir. 1973); United States v. Puco, 453 F.2d 539, 542, n. 9 (2d Cir. 1971). Mindful of that concern, our reading of Johnson's response to this attorney's question indicates that while he may have "opened up" the subject of his *criminal record* in relation to dangerous

the matter. *Cf.* Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). The government does not now argue, and we do not conclude, that this exchange "opened up" the inquiry in question.

4. The trial judge observed that the inquiry was "entirely proper after the defendant got on the stand and testified he never had anything to do with heroin and never had [sic], so, the defendant opened it up. That is the reason the court let it in, otherwise it would have been clearly inadmissible."

drugs, his response should not be construed to permit the government to submit the uncommonly remote and highly prejudicial evidence that heroin was found in the bedroom of a house where he was a guest when he was arrested. We think this evidence clearly lacked enough substantial relevance to outweigh its prejudicial effect and we hold that its admission was an abuse of discretion.[5] *See* United States v. Phillips, 401 F.2d 301, 306 (7th Cir. 1968). *See also* Martin v. United States, 404 F.2d 640, 642–643 (10th Cir. 1968); United States v. Krulewitch, 145 F.2d 76, 80 (2d Cir. 1944).

Reversed.

5. In United States v. Jose Perez and Vivian Perez, 493 F.2d 1339 (10th Cir., filed March 18, 1974), this court held that the defendants had not "opened the door" to testimony which was found to be erroneously admitted in "violation of the right of confrontation as well as the hearsay rule." The conviction, nevertheless, was affirmed since there was sufficient independent evidence to lead the court to believe "that the errors were harm- less beyond a reasonable doubt." We are faced with a different factual situation here, since Johnson, unlike the defendants in *Perez*, contends that he lacked the specific intent to sell heroin. The very essence of our case is the jury's evaluation of Johnson's credibility, and the admission of the tainted evidence under these circumstances can by no means be considered harmless.