**The UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Dean BARTON,**
**Defendant-Appellant.**

**No. 83–1295.**

United States Court of Appeals,
Tenth Circuit.

April 4, 1984.

Reber Boult, Albuquerque, N.M., for defendant-appellant.

James F. Blackmer, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., and Robert J. Baca, Asst. U.S. Atty., Albuquerque, N.M., with him on brief), for plaintiff-appellee.

Before SETH, Chief Judge, BARRETT, Circuit Judge, and O'CONNOR *, District Judge.

---

* Honorable Earl E. O'Connor, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

O'CONNOR, District Judge.

James Dean Barton appeals from a jury verdict finding him guilty of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C.App. § 1202(a). On appeal, Barton raises four issues: (1) whether certain expert testimony concerning an "inconclusive" test result was properly admitted into evidence; (2) whether the jury's verdict could be unanimous as to guilt when the evidence supported alternative theories of "possession"; (3) whether comments by the prosecutor in closing argument, concerning the appellant's silence at the time of arrest and his failure to testify at trial, were prejudicial and violated the appellant's fifth amendment rights; and (4) whether the jury was properly constituted. Because the case must be reversed and remanded for a new trial, we will consider each of the points raised.

*Factual Background*

On July 10, 1982, a shooting took place in the parking lot of the Alpha Apartments in Albuquerque, New Mexico. Several shots were fired into a car, wounding one of the occupants. Shortly after the shooting, police officers were dispatched to investigate. Upon arriving at the parking lot, the officers discovered a car with broken windows and holes in the windshield. A license plate check revealed that the car was registered to appellant, James Dean Barton, who was a tenant of the Alpha Apartments. When the officers were informed that there was an outstanding warrant for Barton, they went to his apartment to make the arrest.

Barton was arrested while alone in his studio apartment, approximately one and one-half hours after the shooting. He was advised of his rights and remained silent. His apartment was placed under seal while a search warrant was obtained. During a search pursuant to that warrant, officers discovered a .45 caliber pistol under a pillow on the daybed in Barton's apartment. Ballistics tests later revealed that the gun

matched shell casings found in the parking lot and bullets found in the victim's car.

At trial, the government presented evidence to establish the above facts. In addition, the victim of the shooting, Jack Zickmund, identified Barton as the person who fired the shots. Thus, the government presented evidence on two theories of possession: first, that Barton had actual possession of the gun while firing shots at Zickmund; and second, that Barton had constructive possession of the gun while it was in his apartment when he was the only occupant.

The defense proceeded on the theory that Barton never had actual possession of the gun because someone else had done the shooting, and that he never had constructive possession of the gun because it was brought into his apartment and hidden on the daybed by someone else. Barton did not testify at the trial.

I.

Barton argues that the trial court improperly admitted expert scientific testimony to the effect that barium residue had been found on his hand, after the same expert witness had testified that the results of the primer residue test on Barton had been "inconclusive." We disagree.

The expert witness, Jerry O'Donnell, who was Director of the Albuquerque Police Department Crime Lab, was called as a witness for the defense. The government attorney stipulated to O'Donnell's qualifications as a chemist and as an expert. On direct examination, O'Donnell testified that a primer residue test on Barton's hand was "inconclusive" (as opposed to "negative" or "positive") and, therefore, did not prove that Barton had fired a gun. On cross-examination, O'Donnell explained that primer residue is usually found on the back of the index finger and thumb of the hand used to fire the gun. When the government attorney questioned Mr. O'Donnell as to the location of residue found on Barton's hand, defense counsel objected on the ground that the test results were "inconclusive" and, therefore, that a valid scientific con-

clusion could not be made. The trial court overruled the objection, on the ground that it went to the weight rather than the admissibility of the testimony.

Cross-examination continued, and O'Donnell testified that some residue had been found on the back of Barton's right index finger and thumb, which was consistent with firing a gun. O'Donnell explained that Barton's primer residue test was "inconclusive" because only one of the primer residue metals, barium, was found in significant amounts on his hand. A "positive" result occurs only when both barium and antimony are present in sufficient quantities. Thus, Barton's test neither proved nor disproved that he had fired the gun. On re-direct examination, O'Donnell conceded that a person could get barium on his hand without firing a gun.

■ Rule 702 of the Federal Rules of Evidence provides, generally, that expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." As a general rule, the admission of expert testimony is within the sound discretion of the trial court, and its rulings will not be disturbed absent a clear abuse of discretion. *United States v. Samara*, 643 F.2d 701, 704 (10th Cir.1981), *cert. denied*, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1982). *See also United States v. Posey*, 647 F.2d 1048, 1051 (10th Cir.1981).

■ From the record and the briefs before us, it does not appear that Barton challenges the reliability or accuracy of the primer residue test. In fact, O'Donnell was called as a witness to testify for the defense. Barton's objection at trial and his contention on appeal is that once O'Donnell testified that the primer residue test results were "inconclusive," no further testimony concerning his findings was admissible. We believe the argument lacks substance.

During direct examination by defense counsel, O'Donnell did not state that the primer residue test results were negative or that they were in any way unreliable. Instead, O'Donnell testified that the test conducted on Barton was neither positive nor negative, but inconclusive as to the ultimate question of whether or not Barton had fired a gun. On cross-examination, the government attorney simply gave O'Donnell the opportunity to explain what the test did show and why the result was deemed "inconclusive." Rule 705 of the Federal Rules of Evidence makes it clear that the facts and findings underlying the testimony of an expert witness are a proper subject for cross-examination. Accordingly, we cannot say that the trial court abused its discretion in admitting the testimony.

II.

Barton also contends the trial court erred in refusing to instruct the jurors that they must reach a unanimous verdict on the theory of either actual or constructive possession. Barton's argument that the verdict was not unanimous unless all twelve jurors agreed that he had actual possession of the gun, or that all twelve agreed that he had constructive possession of the gun, is without merit.

■ The statute under which Barton was convicted provides in relevant part as follows:

Any person who—(1) has been convicted by a court of the United States or of a state or any political subdivision thereof of a felony .. and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act [enacted June 19, 1968], any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

18 U.S.C. app. § 1202(a) (1982).

Barton was indicted and tried for possession of a firearm by a felon. The relevant act prohibited by the statute is "possession," which encompasses both actual and constructive possession. The trial court correctly instructed the jury on these two types of possession. *See, e.g., United States v. Zink*, 612 F.2d 511, 516 (10th Cir.1980); *United States v. Kalama*, 549

F.2d 594, 596 (9th Cir.1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564 (1977). Actual and constructive possession are not alternative crimes under the statute. Rather, they provide different means or theories by which the offense of "possession" may be proved. *See Rodella v. United States,* 286 F.2d 306 (9th Cir.1960), *cert. denied,* 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961).

Barton relies primarily upon *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977). In *Gipson,* the court of appeals held that the trial court erred in instructing the jurors that they need not unanimously agree that the defendant had committed the same prohibited act, as long as they agreed that the defendant had violated some act prohibited under the statute. The court concluded that in light of such an instruction, "[t]he possiblity that the jury may have returned a guilty verdict in the face of a substantial rift among the jurors over the facts in the case is ... a real one." 553 F.2d at 459.

The instant case is clearly distinguishable from *Gipson.* First, that case involved a different statute, 18 U.S.C. § 2313, which prohibited receipt, concealment, storage, barter, sale, or disposal of stolen motor vehicles or aircraft in interstate commerce. Second, unlike Barton, the defendant there was charged with committing more than one prohibited act. In one of the two counts against him, he was charged with the alternative crimes of selling or receiving a stolen vehicle. Thus, there was a real possibility that the jurors might disagree as to which of the prohibited acts had been committed. Third, the trial court in *Gipson* compounded the problem by erroneously instructing that the jurors need not unanimously agree which of the prohibited acts the defendant had committed. No such instruction was given in the instant case. Instead, the court below properly instructed the jury that its verdict must be unanimous as to the offense charged. (R. 418–419.)

For the foregoing reasons, we find that *Gipson* is not controlling here. Ac-cordingly, the trial court had no duty to give an instruction requiring unanimity as to the theory by which the jury concluded that defendant has committed the proscribed act. The court's general instruction requiring unanimity as to whether Barton committed the proscribed act with which he was charged—possession—was sufficient. *See United States v. Natelli,* 527 F.2d 311, 325 (2d Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976).

## III.

Barton's third point on appeal (and the one we believe to be crucial) is that comments by the prosecutor during closing argument violated his fifth amendment privilege against self-incrimination and his right of due process. In response, the government argues that the statements were legitimate comments on the evidence presented.

During the prosecution's final rebuttal argument, the government attorney made the following comments regarding the evidence that some primer residue was found on Barton's hand:

> How did the residue get on that hand, and where exactly, where was it? How did it get there? There is testimony from Judy Norush that Mr. Barton didn't handle the weapon. You heard her say that. How did it get—if he'd have carried the weapon after Mr. Brockett did the shooting, if he'd have carried the weapon to put under his pillow, he'd have it in the palm of his hand. Shooting, you would carry the gun like this. (Indicating.)
>
> How are we going to explain that? It was never explained.
>
> (R. 396–397.)

Shortly thereafter, the government attorney made the following comments:

> And now, if Mr. Barton didn't do anything here, the police show up, they ask him to explain. Why didn't Mr. Barton tell them, "I've got a gun here; there

was a shooting." Was he protecting Mr. Brockett?

He had a chance when he was arrested. He had several chances at the——he was arrested, he was given his rights and asked to make comments; he didn't say anything. He didn't say anything about his car being broken.

(R. 397.)

At the conclusion of the prosecution's argument, defense counsel moved for a mistrial on the ground that the government attorney had impermissibly commented on Barton's failure to testify. Although the motion was denied, the trial court in instructing the jury emphasized the defendant's right not to take the stand. The court stated:

> The law does not require a defendant to prove his innocence or produce any evidence at all. And no inference whatever may be drawn from the election of the defendant not to testify.
>
> Again, I would emphasize to you that part of my instruction. The fact that the defendant chooses not to testify is not to be considered by you as any evidence whatsoever in reference to guilt, and you are not to draw any inferences from that. That is an important instruction. All the instructions, of course, are important, but that is a basic rule. And I discussed it with you previously, and I want to emphasize it to you at this point.

(R. 407.)

The trial court gave no instruction or admonition concerning the defendant's right to remain silent at the time of arrest.

Barton contends that the government attorney first commented on his [Barton's] failure to testify, thereby violating his privilege against self-incrimination under *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and then commented on his silence at the time of his arrest, thereby violating his fifth amendment right to due process, as described in *Doyle v. Ohio*, 426 U.S. 610, 616, 96 S.Ct. 2240, 2243, 49 L.Ed.2d 91 (1976). Because two distinct constitutional violations are alleged, we will discuss them individually.

## A. *Comment on Failure to Testify.*

Prosecutorial comment upon an accused's failure to testify violates the self-incrimination clause of the fifth amendment of the Constitution. *Griffin v. California, supra.* The test employed in this circuit to determine whether the prosecutor's remark will be considered a comment on the defendant's failure to testify is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955).

Viewed in light of this standard, the propriety of the government attorney's remarks concerning the lack of explanation of how Barton got barium residue on his hand and how the gun got into his apartment after the shooting is a difficult question. Because these remarks concern matters that could have been explained only by the accused, the remarks give rise to an innuendo that the matters were not explained because Barton did not testify. *See Runnels v. Hess*, 653 F.2d 1359, 1363 (10th Cir.1981); *Doty v. United States*, 416 F.2d 887, 890 (10th Cir.1968), *vacated as to Epps only*, 401 U.S. 1006, 91 S.Ct. 1247, 28 L.Ed.2d 542 (1971). Thus, the government attorney's remarks were comments, albeit indirect, on Barton's failure to testify in his own behalf.

Although the government suggests that the defendant's objection was not timely, the lack of a contemporaneous objection to the prosecutor's comments does not bar review by this court. In light of the substantial nature of the right involved, we have previously held that such comments constitute "plain error." *United States v. Young*, No. 81–1536, slip op. at 10 (10th Cir. Feb. 22, 1983); *United States v. Nolan*, 416 F.2d 588, 594 (10th Cir.), *cert. denied*, 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969); *Doty v. United States, supra*, 416 F.2d at 890. Plain error may be noticed and corrected even absent an objection. *See* Fed.R.Crim.P. 52(b).

Although a violation of a criminal defendant's constitutional rights is not per se reversible error, the prosecution must demonstrate that the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Eberhardt v. Borden-kircher*, 605 F.2d 275 (6th Cir.1979). In determining whether these prosecutorial comments were harmless error, however, we believe they must be examined in the context of the additional comments made by the government attorney.

### B. Comments on Defendant's Silence at Time of Arrest.

In *Doyle v. Ohio, supra*, the Court held that a suspect who has been apprised of his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is implicitly assured that his silence will not be used against him, and that the use of his resulting silence to impeach his testimony at trial is fundamentally unfair and violates the due process clause of the fifth amendment. We believe that the unfairness is even greater when, as in the instant case, the accused exercises his right to silence throughout the proceedings and does not testify in his own behalf. From the record before us, we have no difficulty in holding that the government attorney's statements concerning Barton's failure to explain to the police were such "that the jury would naturally and necessarily take it to be a comment on" Barton's exercise of his right to remain silent. *See Knowles v. United States, supra.*

The absence at trial of any objection to these comments does not prevent us from considering them on appeal. The magnitude of the right involved is such that the comments on Barton's post-arrest silence constitute "plain error." *See Deats v. Rodriguez*, 477 F.2d 1023, 1024 (10th Cir.1973); *United States v. Arnold*, 425 F.2d 204, 206 (10th Cir.1970); *United States v. Nolan, supra*, 416 F.2d at 594. Accordingly, the lack of an objection may be disregarded. *See* Fed.R.Crim.P. 52(b).

Unlike the earlier comments on Barton's failure to testify, the subsequent remarks constitute a direct and unequivocal comment on the accused's exercise of his fifth amendment right to silence at the time of arrest. Moreover, there was no curative instruction from the trial court regarding Barton's right to post-arrest silence. In light of these facts, we cannot conclude that the government has met its burden of proving that the comments on Barton's silence were harmless beyond a reasonable doubt. *See Chapman v. California, supra.*

In addition, we believe that the prosecutorial comments on Barton's failure to testify, which were followed shortly by the comments on Barton's post-arrest silence, cannot be said to be harmless beyond a reasonable doubt. The prejudicial comments regarding Barton's silence at the time of his arrest tended to reinforce the prior remarks on failure to testify and to diminish the curative effect of the court's subsequent instruction. Taken as a whole, therefore, we believe that the comments of the government attorney in this case constitute reversible error.

### IV.

Barton's final contention on appeal is that the jury was improperly constituted because Indians and blacks were underrepresented. We disagree. Barton concedes that this contention is contrary to our decision in *United States v. Yazzie*, 660 F.2d 422 (10th Cir.1981), *cert. denied*, 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 464 (1982). Accordingly, Barton's final contention must be rejected.

### Conclusion

Because we find that the comments of the government attorney during closing argument constituted prejudicial comment on the accused's failure to testify and on his silence at the time of arrest, the judgment and conviction must be and hereby are REVERSED and the case is REMANDED for a new trial.