Fred VELARDE, Plaintiff-Appellant,

v.

Ken SHULSEN, Warden, Defendant-Appellee.

No. 84–2452.

United States Court of Appeals, Tenth Circuit.

March 22, 1985.

Fred Velarde, pro se.

David L. Wilkinson, Atty. Gen., and J. Stephen Mikita, Asst. Atty. Gen., the State of Utah, Salt Lake City, Utah, for defendant-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and MOORE, District Judge.*

PER CURIAM.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal from an order of the district court denying petitioner's application for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.

Petitioner, currently incarcerated at the Utah State Prison, brought this action for a writ of habeas corpus in the United States District Court for the District of Utah. Petitioner asserted that in November of 1982, he had been convicted, after trial by jury in the district court of Morgan County, Utah, of the second-degree felony of auto theft and sentenced to a one—to fifteen-year term of imprisonment. Petitioner's conviction was affirmed by the Utah Supreme Court on January 9, 1984, whereupon petitioner filed this habeas corpus action. Petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b).

The sole issue presented to the federal district court in the habeas petition (as well as to the Utah Supreme Court on direct appeal) was whether the trial court erred in permitting the prosecutor to cross-examine petitioner regarding his post-arrest, post-"Miranda warning" silence, and in permitting the prosecutor to make reference to petitioner's silence in his closing statement, in violation of petitioner's Fourteenth Amendment right to due process. (Relevant portions of the trial transcript are reproduced in the appendix following this opinion.) After consideration of the trial transcript, the opinion of the Utah Supreme Court, and the arguments submitted by the parties, the federal magistrate concluded that the prosecutor's questions could be

---

* The Honorable John P. Moore, United States District Judge for the District of Colorado, sitting by designation.

divided into two categories. Certain questions were directed towards showing that what petitioner told Officer Nelson was inconsistent with petitioner's testimony on the stand. Instead of admitting the inconsistency, petitioner denied making a statement and claimed he invoked his right to silence. However, petitioner's testimony was refuted by Officer Nelson's testimony. The Utah Supreme Court resolved this factual question of whether petitioner had made a statement to Officer Nelson or said nothing in favor of the prosecution. This factual determination the magistrate found to be supported by the record and entitled to a presumption of correctness (Vol. I at 61).

The magistrate found that the prosecutor also engaged in a second type of questioning which was designed to call attention to the fact that petitioner had not made any exculpatory statements at the time of the arrest. This examination the magistrate found was in effect an inquiry into petitioner's silence at the time of his arrest. The magistrate determined that these questions were not related to prior inconsistent statements as allowed by *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), but were of the type specifically prohibited under the Supreme Court's decision of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Consequently, the magistrate concluded, and the district court agreed, that this portion of the prosecutor's examination was constitutional error.

The magistrate then concluded that this error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Attorney General's brief before us agrees that there was constitutional error in the latter portion of the questioning, arguing only that the error was harmless.

▪ We conclude that there was constitutional error in at least part of the questioning and in the argument. *Doyle v. Ohio, supra; Johnson v. Patterson*, 475 F.2d 1066, 1067 (10th Cir.), *cert. denied*, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124

(1973). The issue then is whether the prosecutor's questions and remarks constituted harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Once there has been a determination of constitutional error, it is the government's burden to show that comments made with regard to a defendant's silence were harmless beyond a reasonable doubt. *United States v. Barton*, 731 F.2d 669, 675 (10th Cir.1984). In this case the state did not argue the question of harmless error in the federal district court, but it does now in the recent appellee's memorandum brief at page 3.

This court has held that where the case comes down to a one-on-one situation, *i.e.*, the word of the defendant against the word of the key prosecution witness, and there is no corroboration on either side, the importance of the defendant's credibility becomes so significant that prosecutorial error attacking that credibility cannot be harmless beyond a reasonable doubt. *United States v. Polsinelli*, 649 F.2d 793, 798 (10th Cir.1981). Similarly, this court ruled in *United States v. Johnson*, 495 F.2d 242 (10th Cir.1974), that where the very essence of a case is the jury's evaluation of defendant's credibility, the admission of tainted evidence cannot be considered harmless. *Id.* at 246 n. 5.

▪ In this case, the prosecution's case was entirely circumstantial, a factor which weighs against a conclusion of harmless error. *See Keen v. Detroit Diesel Allison*, 569 F.2d 547, 556 (10th Cir.1978) (McKay, J., concurring in part and dissenting in part). The only evidence linking petitioner to the theft of the truck was that of the state's witness, who had admitted driving the truck and who, petitioner claimed, had been the driver of the truck at the time he gave petitioner a ride. Petitioner's version of the events is not so implausible that it can be said that the jury was unaffected by the prosecutor's comments on his post-arrest silence. There was no corroborating evidence to support either version of the story. *United States*

*v. Polsinelli,* 649 F.2d at 798; *United States v. Johnson,* 495 F.2d at 246 n. 5.

The transcript reveals that the presentation of both the state's and petitioner's evidence lasted only one morning. Consequently, the prosecutor's inquiries regarding petitioner's failure to give his version of the story at the time of arrest in the context of this short trial take on greater significance. *See United States v. Bridwell,* 583 F.2d 1135, 1139 (10th Cir.1978). Moreover, the trial court judge did not give a curative instruction and, to the contrary, overruled defense counsel's objections. *United States v. Barton,* 731 F.2d 669, 675 (10th Cir.1984). Unlike *Bridwell,* the evidence here is less than overwhelming.

Finally, the prosecutor's intent to call attention to petitioner's silence at the time of his arrest is further demonstrated by his comments during closing argument, which, contrary to the magistrate's conclusions, do emphasize petitioner's post-arrest silence. There had been repeated objections to the constitutional error in the questioning (Vol. II at 147, 149, 150), which were overruled. The absence of a further objection to the argument itself does not preclude consideration of the constitutional error in the argument because the Utah Supreme Court considered petitioner's contention on this issue on the merits and there was no finding of a procedural default by petitioner in the state court trial. *Ulster County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *see Engle v. Isaac,* 456 U.S. 107, 135 n. 44, 102 S.Ct.

1558, 1575 n. 44, 71 L.Ed.2d 783 (1982). We therefore hold that there was constitutional error in the repeated questions by the prosecuting attorney and the closing argument which violated petitioner's due process right to remain silent, contrary to the holding of *Doyle v. Ohio, supra,* and other authorities.[1]

We also note that a certificate of probable cause was not issued in the district court. However, in the interest of justice, we will construe petitioner's notice of appeal as such a request, pursuant to Fed.R. App.P. 22(b), and hereby issue a certificate of probable cause.

The judgment of the United States District Court for the District of Utah is REVERSED. The cause is REMANDED with directions that it be held in abeyance for sixty days to permit the state to re-try the petitioner; if such retrial does not occur, then the writ shall issue.

*Appendix*

During the course of the prosecution's cross-examination of petitioner, the prosecutor asked petitioner the following questions:

Q. Mr. Velarde, on that evening, why didn't you tell Officer Nelson your side of the story? [defense counsel's objection is overruled]

A. 'cause [sic] he read me my Miranda rights, and I felt that I didn't have to answer him any questions that

---

1. In so holding, we are mindful of the recent Supreme Court decision in *United States v. Young,* —— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). There the Court held that a prosecutor's improper remarks in closing argument pertaining to his personal belief of defendant's guilt did not constitute "plain error" undermining the fundamental fairness of the trial, on consideration of the entire record. The Court there applied the "plain error" standard because the case involved a direct appeal asserting errors not objected to at trial.

However, the "plain error" standard does not apply and instead the "cause and prejudice" standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies in a habeas proceeding attacking a state conviction, when the state courts invoke state law to dis-

miss a defendant's federal claims on procedural grounds that the defendant did not properly object. *See Hux v. Murphy,* 733 F.2d 737, 739 (10th Cir.1984); *cf. United States v. Frady,* 456 U.S. 152, 164–66, 102 S.Ct. 1584, 1592–93, 71 L.Ed.2d 816 (1982); *see also Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). Nevertheless, we need not reach the "cause and prejudice" test here because the state court considered the constitutionality of the closing argument on the merits and made no finding of procedural default. *Hux v. Murphy,* 733 F.2d at 738–39; *Morishita v. Morris,* 702 F.2d 207, 209 (10th Cir.1983); *Corn v. Zant,* 708 F.2d 549, 555 n. 2 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984).

would put my, that would be used against me in a court of law.

Q. Mr. Velarde, haven't you repeatedly told Mr. Nelson after the Miranda Warning, I think, that you couldn't remember anything?

A. Well, that's just like not talkin' to him.

Q. Now but, Mr. Velarde, have you repeatedly told Mr. Nelson upon direct questioning from him did you not, that you didn't want to talk because of your legal rights, but simply you couldn't remember anything?

(Vol. II at 146–147).

. . . .

Q. And is it your position, Mr. Velarde, that, do I understand your testimony correctly, is that you chose not to tell Mr. Nelson anything because you don't trust police officers?

A. That's correct.

Q. So you have elected to go forward with this entire criminal prosecution, be arrested for vehicle theft, and wait until today for the first time to give your version of what happened? [defense counsel's objection is overruled by the court]

(Vol. II at 149).

. . . .

Q. Mr. Velarde, this is the first time that you have elected to state your version of what occurred in Salt Lake County and in Morgan County, is that true?

A. Well yea, it's the first time I have said anything about the case. This is—

Q. And that, and notwithstanding that this offense occurred in excess of six weeks ago?

A. What do you mean by that?

Q. For six weeks you have chosen to remain silent and to utilize just today to say—

A. I have talked to my attorney.

(Vol. II at 151).

During the course of closing arguments the prosecutor stated:

Why does Mr. Velarde remember now but he didn't remember then? . . . . Why does Mr. Pentz in effect put himself back into the boiling water by calling the Sheriff's Office, telling him where to go and then *unlike Mr. Velarde*, relate to the officer what happened? . . . . And why does Mr. Velarde wait six weeks? Why not at the accident scene say, I'm innocent? . . . .

(Vol. II at 159) (emphasis added).

Later, during his rebuttal the prosecutor said:

but human nature is not such that Mr. Pentz would put everything on the line to put himself back into a crime with no expectations that Mr. Velarde in a sense of outrage, in a sense of absolute pure indignation will say hey, wait a minute, let's get this story straight. He picked me up in Salt Lake. I passed out. He drove me here. I didn't ever have that truck. But instead he said. . . .

(Vol. II at 165).