**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eduardo TRABANINO, Defendant–Appellant.**

**No. 01–2238.**

United States Court of Appeals, Tenth Circuit.

May 21, 2002.

Before EBEL, BALDOCK, and HARTZ, Circuit Judges.

ORDER AND JUDGMENT *

BALDOCK, Circuit Judge.

A jury convicted Defendant Eduardo Trabanino on one count of conspiracy to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 846. The district court sentenced Defendant to 108 months imprisonment, followed by four years of supervised release. On appeal, Defendant argues the evidence which the

---

Government presented at trial was insufficient to sustain his conviction. Defendant also claims the government engaged in prosecutorial misconduct during closing arguments. Defendant contends when the prosecutor twice told the jury in her closing remarks the Government is "not the only one that can subpoena witnesses," she committed plain error by transferring the burden of proof to Defendant to call witnesses in his defense. Rec. Vol. V at 24. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## I.

At trial, the government produced four witnesses: Lieutenant Clarence Romero of the Narcotics Task Force, Agent Alejandro Sanchez of the Drug Enforcement Agency (DEA), and alleged co-conspirators Yvette Quintana and Jesusita Carla Vigil. According to Quintana and Vigil's testimony, in late 1999, they entered into arrangements with Defendant to aid in the sale of crack cocaine from a residence at 702 Colonias Street in Las Vegas, New Mexico. Rec. Vol. III at 67–68, 121–22, 143–44. Quintana served as a salesperson in exchange for Defendant "supporting" her. *Id.* at 67–68, 181–82. Vigil acted as a "lookout" in exchange for Defendant and Quintana supplying her with crack cocaine to support her addiction. *Id.* at 121–22, 133, 181–82. Quintana and Vigil testified that Defendant purchased and brought the crack cocaine to the residence, maintained control of the crack cocaine at the residence, kept control of the money received from the sales of the crack cocaine, and was generally "in charge" of the operation. *Id.* at 72, 84, 122, 125, 134–35, 159–60. Defendant spent the majority of the time in the back bedroom of the residence. *Id.* at 72–73, 124–25. When a prospective buyer arrived at the residence, Quintana and Vigil would enter the back bedroom to ask Defendant if they could sell to the

prospective buyer. *Id.* at 74, 122, 125, 135, 159–60. Quintana and Vigil would tell Defendant how much crack cocaine the prospective buyer sought, transport the crack cocaine from the bedroom to the buyer, and return the money from the sale to Defendant. *Id.* at 72, 122. Defendant dealt directly only with customers "that carried more money." *Id.* at 72–74, 123–26. Quintana testified she would not have been capable of selling crack cocaine without Defendant. *Id.* at 84.

In early December, 1999, the Las Vegas Police Department received information from police informant "Stan" of cocaine sales from the residence. *Id.* at 32. A police "utility check" on the residence established Defendant registered the utilities in his name. *Id.* at 32–33. Lieutenant Romero testified that police surveillance of the residence also revealed Defendant "had been at th[e] residence," used the residence as a "selling point," and "was there all the time." *Id.* at 34, 53–55, 108. Lieutenant Romero met with Stan on December 30, 1999, to arrange a narcotics purchase from the residence. *Id.* at 33. That same day, Stan purchased $40 worth of crack cocaine from the residence. *Id.* at 62. He informed Lieutenant Romero he met Defendant during the transaction. *Id.* at 34–35, 47–48, 54, 56.

On January 22, 2000, Agent Sanchez accompanied Stan for another cocaine purchase at the residence. *Id.* at 170–74. Upon entering the residence, Vigil, who was then acting as a lookout, greeted Agent Sanchez and Stan. *Id.* at 171–72. Quintana also greeted them. *Id.* at 172. Agent Sanchez testified that after he informed Quintana of the amount of cocaine he sought, she told him "she needed to talk to [Defendant]." *Id.* at 182. Agent Sanchez also testified Quintana escorted Stan to the back bedroom to discuss the sale

with Defendant. She then returned and sold Agent Sanchez $300 worth of crack cocaine. *Id.* at 76–77. Quintana and Vigil testified that Agent Sanchez met Defendant during this transaction. *Id.* at 94, 147. Agent Sanchez testified, however, he did not meet Defendant at that time. *Id.* at 196. Upon leaving the residence, Quintana instructed Agent Sanchez to "ask for her, [Vigil], or [Defendant]" if he returned for more crack cocaine. *Id.* at 105–06, 131, 177. On January 24, 2000, Agent Sanchez returned to the residence and made a final purchase of $300 worth of crack cocaine. *Id.* at 77–80, 95–96, 148–50, 179–80. He again met only Quintana and Vigil. *Id.*

## II.

In considering a challenge to the sufficiency of the evidence, we review the record as a whole and consider the evidence in the light most favorable to the Government. We ask whether the evidence is such that any reasonable jury could find Defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Hien Van Tieu,* 279 F.3d 917, 921–22 (10th Cir.2002). In reviewing the evidence, we do not weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury. *Hien Van Tieu,* 279 F.3d at 921.

To prove a conspiracy in violation of 21 U.S.C. § 846, the government must establish: (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators. *United States v. Heckard,* 238 F.3d 1222, 1229 (10th Cir.2001) (quoting *United States v. Carter,* 130 F.3d 1432, 1439 (10th Cir.1997)).

■ Defendant alleges co-conspirators Yvette Quintana and Jesusita Carla Vigil

acted alone. The record, however, contains evidence such that a reasonable jury could find Defendant was a member of the conspiracy. The testimony indicates Defendant entered into an agreement with both Quintana and Vigil to sell crack cocaine. Co-conspirator Quintana testified that she entered into an arrangement with Defendant wherein she would help him sell drugs in exchange for him "paying the bills." Co-conspirator Vigil further testified that she agreed to serve as a "lookout" for the operation in exchange for drugs to support her addiction.

Defendant knew the objective of the conspiracy was to sell crack cocaine. Lieutenant Clarence Romero of the Crack cocaine Task Force testified that Defendant lived at the residence from which crack cocaine was sold, and Defendant turned on and paid the utilities bills for the residence. Both Quintana and Vigil testified that Defendant purchased the crack cocaine and was in control of the crack cocaine, the money, and the residence.

Defendant knowingly and voluntarily involved himself in the drug transactions. Lieutenant Romero testified that Defendant used the residence as a crack cocaine "selling point," and Defendant was identified by a police informant as being present at the residence after a crack cocaine transaction was completed. Quintana testified that Defendant met both the police informant and Agent Sanchez and consented to the initial drug transaction. Vigil also testified that Defendant personally "okayed" the transaction with the police informant. Quintana told Agent Sanchez that "since he was such a good customer, that he'd get a better deal from her husband, [Defendant]," on subsequent crack cocaine purchases. Furthermore, Agent Sanchez corroborated Vigil's testimony by testifying that after his initial purchase of crack cocaine from the residence in ques-

tion, Quintana told him that if he desired to purchase more crack cocaine to "ask for [herself] or [the Defendant]."

Defendant depended on both Quintana and Vigil, and in turn both Quintana and Vigil depended on Defendant. Quintana and Vigil testified that they either acted as lookouts, served as salespersons, or screened potential customers. Quintana further testified that she could not have sold crack cocaine without Defendant because she did not have access to the crack cocaine, nor did she have money to purchase the crack cocaine. Also, Agent Sanchez testified that, although he never personally dealt with Defendant during the crack cocaine transactions, based on his approximately twelve years of training and experience, Quintana and Vigil did not act alone.

Defendant attacks the credibility of Quintana and Vigil and the "conflicting" testimony of all four witnesses. Specifically, he challenges Quintana's and Vigil's testimony because both are convicted co-conspirators, and both entered into plea agreements to testify for the prosecution. We do not consider witness credibility, however, nor do we weigh conflicting testimony. Those tasks fall squarely within the jury's domain. *Hien Van Tieu,* 279 F.3d at 921. The government met its burden of proof on each element of § 846. Based on the record before us, a reasonable jury could conclude Defendant was guilty beyond a reasonable doubt.

### III.

█ Defendant next argues the prosecutor improperly transferred the burden of proof when she twice stated in her closing rebuttal that the Government is "not the only one that can subpoena witnesses."[1] Rec. Vol. V at 24. Because Defendant did not timely object to these statements, we

review his challenge for plain error. *Battenfield v. Gibson,* 236 F.3d 1215, 1225 (10th Cir.2001) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 628–29, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Under plain error review, "relief is not warranted unless there has been (1) error, (2) that is plain, and (3) affects substantial rights. An appellate court should exercise its discretion to correct plain error only if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Jones v. United States,* 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)); *United States v. Bailey,* 286 F.3d 1219, 1222 (10th Cir.2002). Because the district court did not err, we reject Defendant's argument.

The Fifth Amendment privilege against self-incrimination prohibits a prosecutor from commenting on a defendant's invocation of his right not to testify. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Battenfield* 236 F.3d at 1225. If a prosecutor's remarks " 'concern matters that could have been explained only by the accused, ... [they] give rise to an innuendo that the matters were not explained because [defendant] did not testify' and, thus, amount to indirect comment on the defendant's failure to testify." *Battenfield,* 236 F.3d at 1225 (quoting *United States v. Barton,* 731 F.2d 669, 674 (10th Cir.1984)). "A prosecutor, however, 'is otherwise free to comment on a defendant's failure to call certain witnesses or present certain testimony.'" *Id.* (quoting *Trice v. Ward,* 196 F.3d 1151, 1167 (10th Cir.1999)). The question is " 'whether the language used [by the prosecutor] was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's right to

---

1. Defendant fails to cite a single authority in    his brief to support this challenge.

remain silent.'" *Id.* (quoting *United States v. Toro–Pelaez,* 107 F.3d 819, 826–27 (10th Cir.1997)).

The prosecutor's comments clearly concerned Defendant's failure to call certain witnesses. Defendant did not subpoena one witness to testify on his behalf, and the prosecutor was free to comment on this omission. Moreover, Defendant's counsel opened the door for the prosecutor's comments when he stated:

> [The prosecution] can have anyone they want, either voluntarily or by subpoena, ... come up and testify on the prosecutor's behalf.... Why wasn't [Stan] here to say, yes, [Defendant]'s the person?

Rec. Vol. V at 20. Thus, the prosecutor's comments did not violate *Griffin*'s prohibition against comments on Defendant's invocation of his right not to testify, and did not constitute "error," much less plain error.

AFFIRMED.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.