FILED
United States Court of Appeals
Tenth Circuit

April 15, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

BANI MORENO,

     Defendant - Appellant.

No. 13-6221
(D.C. No. 5:12-CR-00297-R-13)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, Chief Judge, **TYMKOVICH** and **MORITZ**, Circuit Judges.
_____

Bani Moreno appeals his jury convictions for one count of conspiracy to

possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846

and 21 U.S.C. § 841(a)(1); two counts of using a communication device to facilitate a

drug transaction in violation of 21 U.S.C. § 843(b); and one count each of

distribution of methamphetamine and possession of methamphetamine with intent to

distribute, both in violation of 21 U.S.C. § 841(a)(1). Citing _Doyle v. Ohio_, 426 U.S.

610 (1976), Moreno argues the government violated his rights under the Fifth and

Sixth Amendments to the United States Constitution by eliciting testimony from a

law enforcement agent regarding Moreno's refusal to answer, without an attorney

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

present, the agent's questions about his involvement in the drug trade. Moreno also contends defense counsel's failure to object to the prosecutor's questions or the agent's responsive testimony violated Moreno's Sixth Amendment right to counsel.

Applying plain-error review, we conclude that given the strength of the evidence against Moreno, and the brief and isolated nature of the agent's testimony, Moreno has failed to establish any *Doyle* error affected his substantial rights. Further, we dismiss Moreno's ineffective-assistance-of-counsel claim without prejudice.

## BACKGROUND

On multiple occasions prior to 2011, Bani "Luis" Moreno sold Iran Zamarripa substantial quantities of methamphetamine. By 2012, Moreno's role had changed and he was seeking to obtain methamphetamine on credit from Zamarripa, the regional supervisor of an international methamphetamine organization. When an investigation of Zamarripa's organization led to the interception of some of that methamphetamine, the government charged Moreno with several drug-related crimes.

At trial, the jury heard numerous recorded phone conversations between Moreno and Zamarripa; between Zamarripa and his local manager, Alfredo Resendiz; and between Moreno and Resendiz. In these calls, the parties used code words to reference drugs, drug quantities, and drug prices. Resendiz and Zamarripa both testified at trial and interpreted the code words for the jury.

Zamarripa testified Moreno ordered a pound of methamphetamine from him on July 11, 2012. According to Zamarripa, Moreno indicated that before confirming the deal, he needed to check with someone—presumably a client—to verify the

2

acceptability of Zamarripa's quoted price. Both Zamarripa and Resendiz testified that Zamarripa directed Resendiz to deliver the methamphetamine to Moreno. Resendiz testified that he and Moreno arranged a time and location for the delivery. Zamarripa also testified Moreno later offered to sell him a building to cover his drug debt.

Resendiz further testified that consistent with his conversation with Moreno, he and Sergio Garcia delivered a pound of methamphetamine to Moreno on the evening of July 11, 2012. Resendiz watched as Garcia got out of the vehicle carrying a pound of methamphetamine, walked to Moreno's car, and returned without the methamphetamine.

In addition to Resendiz's and Zamarripa's testimony and the recorded phone conversations, the jury also heard testimony from law enforcement agents about their visual surveillance of the apparent drug transaction between Garcia and Moreno on July 11, 2012. Later that same day, the agents watched as Moreno met up with another vehicle and conducted what appeared to be a second drug transaction. That evening, law enforcement conducted a traffic stop of the second vehicle and arrested the driver, Salvador Perez, and the passenger, Jaime Ortiz, on outstanding warrants. A search of the vehicle yielded a half-pound of methamphetamine, which Perez testified Moreno had provided.

Federal Bureau of Investigation agent Casey Cox, who interviewed Moreno after his arrest, also testified at trial. Although Moreno initially waived his rights and agreed to speak with Cox, Cox testified he terminated the interview when Moreno, in response to pointed questions about his involvement in the drug trade, "advised he no

3

longer wanted to speak . . . without an attorney present." Trial Tr., Doc. 713, at 74.

Defense counsel did not object to this testimony. Nor did defense counsel object to

the following exchange between the prosecutor and Cox:

> Q. When an individual invokes their right to counsel, do you ask any
> further questions?
> A. No.
> Q. So once that was done by the defendant, you stopped the interview
> immediately?
> A. Yes.
> Q. Did you ask any further questions?
> A. No.

*Id.* at 75.

The district court summoned counsel to the bench and expressed concern about

the prosecutor's questions. Defense counsel echoed the district court's concern, but

confessed he didn't "know how to formulate an objection to [the questioning]." *Id.* at

76. Defense counsel commented, "[O]bviously you're going to instruct [the jury

Moreno] does not need to testify," but "now it's as if they're saying, well, he didn't

testify so he's got something to hide. I don't know if that's a mistrial." *Id.* at 76-77.

In response, the prosecutor maintained she had researched Tenth Circuit case

law and concluded her questions were permissible. She claimed she elicited the

testimony to show that when Moreno invoked his rights, Cox terminated the

interrogation and "complied with the rules." *Id.* at 77. Nevertheless, the district court

admonished her, "Just don't ask that question. I don't think it's helpful and I'm

concerned about it." *Id.* Defense counsel declined the district court's offer of a

4

curative instruction, but again conceded his uncertainty as to the appropriate remedy. *Id.* at 77-78.

Moreno later testified on his own behalf, denying his July 11, 2012, interactions with Zamarripa and Resendiz involved methamphetamine. Instead, he claimed he phoned Zamarripa to request a loan and Zamarripa agreed to send an employee with the requested funds. According to Moreno, after he accepted the cash from one of Zamarripa's employees, he phoned Zamarripa to warn him his employees might be "up to something"; one employee seemed drunk or high, and it appeared someone had followed Moreno after the transaction. Trial Tr., Doc. 718, at 949-50. Moreno testified that sometime thereafter, he again spoke with Zamarripa on the phone and offered to sell him a building because he was having trouble making payments on it. Moreno denied that any of these conversations concerned drugs, and maintained he did not receive, possess, or distribute any methamphetamine on July 11, 2012.

Unconvinced, the jury convicted Moreno of one count of conspiracy to possess methamphetamine with intent to distribute; two counts of using a communication device to facilitate a drug transaction; one count of possession of methamphetamine with intent to distribute; and one count of distribution of methamphetamine. The district court sentenced him to 151 months in prison. Moreno appeals.

DISCUSSION

**I.      Any *Doyle* violation did not rise to the level of plain error.**

Citing *Doyle v. Ohio*, 426 U.S. 610 (1976),[1] Moreno first argues the

government violated his rights under the Fifth and Sixth Amendments to the United

States Constitution when the prosecutor elicited testimony from Cox regarding

Moreno's refusal to answer further questions without an attorney present. Because

Moreno did not object to the prosecutor's questions or Cox's testimony, we review

for plain error.[2] *United States v. Barton*, 731 F.2d 669, 674 (10th Cir. 1984).

In order to demonstrate plain error, Moreno must first show (1) an error,

(2) that is clear or obvious under current law, and (3) that affected his substantial

rights. If Moreno makes such a showing, we may reverse only if (4) the error

seriously affected the fairness, integrity, or public reputation of the proceedings.

*United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011).

Even if we assume the prosecutor clearly and obviously erred under current

law in eliciting testimony about Moreno's post-arrest request for an attorney, Moreno

cannot show the error affected his substantial rights. That is, he cannot demonstrate a

---

[1] In *Doyle*, the United States Supreme Court concluded the use of the petitioners' post-arrest silence for impeachment purposes violated their due process rights. 426 U.S. at 619; s*ee also Wainwright v. Greenfield*, 474 U.S. 284, 286-87, 295 (1986) (applying *Doyle* to prosecutor's comment on respondent's post-arrest request for attorney).

[2] The government argues Moreno has waived, rather than merely forfeited, any claim of error. In the alternative, the government claims we may review only the district court's failure to give a limiting instruction or *sua sponte* declare a mistrial. Because we conclude Moreno's claim clearly fails as presented, we find it unnecessary to address the government's procedural arguments.

reasonable probability the result of his trial would have been different but for the error. *See United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014).

First, the prosecutor only briefly mentioned Moreno's request for an attorney on the first day of a six-day trial, and the prosecutor never suggested, let alone explicitly argued, the request constituted evidence of Moreno's guilt.[3]

Second, the government presented overwhelming evidence of Moreno's guilt. Two witnesses testified Moreno ordered and received one pound of methamphetamine on July 11, 2012, while a third witness testified Moreno distributed at least a half-pound of methamphetamine later the same day. The jury heard recordings of phone calls in which Moreno, speaking in code, ordered the methamphetamine, arranged to meet Resendiz to receive the methamphetamine, warned Zamarripa he noticed someone following him, and offered to sell Zamarripa a building to cover his drug debt. Finally, evidence gleaned from law enforcement's visual surveillance efforts corroborated the witnesses' testimony and their interpretations of the phone calls. Given the overwhelming evidence of Moreno's guilt and the brief and isolated nature of Cox's testimony, Moreno cannot meet the heavy burden of establishing a reasonable probability any *Doyle* error affected the outcome of his trial.

_____

[3] Although Moreno claims the government attempted to show his request for an attorney indicated he had something to hide, he provides no citation to the record indicating the prosecutor explicitly argued as much. Nor does he explain how the inference was implicit in either the prosecutor's questions or Cox's testimony.

7

In arguing otherwise, Moreno cites *Velarde v. Shulsen*, 757 F.2d 1093 (10th Cir. 1985), and *United States v. Barton*, 731 F.2d 669 (10th Cir. 1984). But in *Velarde,* unlike in this case, the government's evidence was entirely circumstantial and based solely upon the testimony of a single state's witness linking the petitioner to the crime. 757 F.2d at 1095. And in *Barton*, the prosecutor explicitly argued the defendant's post-arrest silence was indicative of his guilt. 731 F.2d at 673-74. Here, the prosecutor made no such argument. Moreover, we found the prosecutor's comment in *Barton* particularly problematic because the defendant declined to testify at trial and the prosecutor compounded the *Doyle* violation by commenting on that silence as well. *Id.* at 675. Unlike the defendant in *Barton*, Moreno *did* testify at trial. Thus, the facts in *Velarde* and *Barton* are distinguishable, and neither case supports Moreno's argument here that the prosecutor's error affected Moreno's substantial rights.

Given the strength of the evidence against Moreno and the brief and isolated nature of Cox's testimony, Moreno has not established that any *Doyle* error affected his substantial rights. Thus, we reject Moreno's claim without considering whether he can satisfy the remaining three requirements of the plain-error test. *See United States v. Cotton*, 535 U.S. 625, 632-33 (2002) (declining to analyze other plain-error requirements because respondent could not show error seriously affected fairness, integrity, or public reputation of proceedings).

**II.     We dismiss Moreno's claim of ineffective assistance of counsel without prejudice.**

Next, Moreno asserts an ineffective assistance of counsel claim based on defense counsel's failure to object to the mention of Moreno's post-arrest request for an attorney. But we have consistently characterized ineffective-assistance-of-counsel claims raised on direct appeal as presumptively dismissible. *See, e.g.*, *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995). In fact, even when the facts are sufficiently developed to allow us to reach the merits of such a claim for the first time on direct appeal, we typically decline to do so. *See United States v. Edgar*, 348 F.3d 867, 869 (10th Cir. 2003) (citing benefit of district court's view in resolving ineffective-assistance-of-counsel claims); *Galloway*, 56 F.3d at 1240 (explaining district court's opinion aids appellate review even if record needs no factual development). Accordingly, we dismiss this claim without prejudice.

## CONCLUSION

We affirm Moreno's convictions, and we dismiss his ineffective-assistance-of-counsel claim without prejudice.

Entered for the Court

Nancy L. Moritz
Circuit Judge

9