**Juan Lorenzo BACA,
Petitioner-Appellant,**

v.

**George E. SULLIVAN, et al.,
Respondents-Appellees.**

No. 85–1654.

United States Court of Appeals,
Tenth Circuit.

June 29, 1987.

Edwin Macy, Asst. Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

Kim Kaufman Michel, Asst. Atty. Gen., Santa Fe, N.M., for respondents-appellees.

Before SEYMOUR, MOORE and TACHA, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir. R. 34.1.8. The cause is therefore ordered submitted without oral argument.

Juan Lorenzo Baca was convicted in state court of first degree murder and sentenced to life imprisonment. He appeals from a district court order dismissing his petition for writ of habeas corpus under 28 U.S.C. § 2254 (1982). Baca contends that (1) the photographic identification procedure was impermissibly suggestive, (2) a juror's failure to disclose certain information at *voir dire* deprived defendant of a

fair and impartial jury, and (3) the prosecutor's questions about the "Nuestra Familia" organization denied him a fair trial. We affirm, concluding that Baca has not demonstrated any errors that "deprived him of fundamental rights guaranteed by the Constitution of the United States." *Brinlee v. Crisp*, 608 F.2d 839, 843 (10th Cir.1979), *cert. denied*, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980). The particular facts relevant to the issues raised are set forth in our discussion of those issues.

## I.

## PHOTOGRAPHIC IDENTIFICATION PROCEDURE

Defendant contends that the photographic displays by which he was linked to the murder were so suggestive, and the eyewitness identification so unreliable, that introduction into evidence of the identifications denied him due process and a fair trial. We disagree.

Defendant was convicted of the April 9, 1979 murder of Toby Baca,[1] who was shot to death in front of his house in Albuquerque. JoAnn Baca, the victim's wife, witnessed the shooting from inside the house, and was instrumental in identifying defendant as the gunman. JoAnn testified that a blue car, which she recognized as belonging to Joe ("Shuske") Baca, pulled into the driveway. She recognized Shuske, who was driving, but did not recognize another man in the car, who had a gun. Toby Baca went out to meet the two men, while JoAnn watched for a few minutes from behind a screen door. In between attending her crying baby and telephoning her husband's brother, Americo Baca, for help, JoAnn watched the gunman shoot her husband several times.

Immediately after her husband's death, JoAnn was so distraught that she could not be questioned and required a sedative. Testimony at trial indicated that in the days following the incident, she was in a state of confusion, extremely upset, and afraid she would not be able to identify the gunman. Two days after the murder, on April 11, JoAnn gave a written statement identifying Shuske Baca as the driver of the car, but she was unable to give a detailed description of the gunman. The same day, she was shown an array of five photographs. Defendant's picture was not included. JoAnn indicated that two photos resembled the gunman, but she made no positive identification.

On April 13, accompanied by Americo Baca, JoAnn returned to the police station. The police showed her a second array of seven or eight photographs, which included pictures of both Shuske and defendant. Upon viewing the array, JoAnn positively identified defendant, became extremely upset and began to cry, and was taken from the room. Witnesses testified that no one had suggested whom JoAnn should identify or indicated that Juan Baca was a suspect.

On June 5, JoAnn was shown a third photo array. The array contained one black and white photo of Shuske, and four color photos, one picturing defendant. The men in the photos were all Hispanics of similar age. Defendant was the only one wearing a leather jacket. Again, JoAnn positively identified defendant, and later told a detective that the leather jacket in the picture was the same one worn by the gunman. At trial, JoAnn testified that she picked defendant's photo because of his face and his eyes. A friend of JoAnn's testified that she told him she had picked defendant because of the leather jacket—a statement that JoAnn denied having made. Evidence of the second and third photo array identifications was admitted at trial, as was JoAnn's in-court identification.

Viewed within the "totality of surrounding circumstances," *Simmons v. United States*, 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968), the photographic identification procedure was not

---

1. Numerous Bacas are involved in this case. For purposes of our discussion, we need only identify five. Juan Baca is the defendant. His cousin, also implicated in the murder, is Joe ("Shuske") Baca. The victim, Toby Baca, his wife, JoAnn Baca, and his brother, Americo Baca, apparently are unrelated to defendant or his family. *See* Rec., vol. I, at 32.

unconstitutionally suggestive. We must presume correct the state supreme court's findings that JoAnn positively identified defendant in the second photo array and that there is no indication that the victim's brother, Americo, influenced her selection. *See* 28 U.S.C. § 2254(d) (presumption of correctness for state court factual findings); *Sumner v. Mata*, 455 U.S. 591, 592–93, 102 S.Ct. 1303, 1304–05, 71 L.Ed.2d 480 (1982) (§ 2254(d) presumption equally applicable to state appellate court findings of fact). Defendant has failed to rebut this presumption. *See Hunt v. Oklahoma*, 683 F.2d 1305, 1309 (10th Cir.1982). The evidence [2] does not suggest that the police indicated to JoAnn who the suspects were or that they influenced her in identifying defendant. We are not convinced that the photographic displays themselves were suggestive, with the possible exception of the third array, in which defendant was the only individual wearing a leather jacket—an item linked by JoAnn to the murderer. Considering that she had already positively identified defendant in the second photo array, we do not think that the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384, 88 S.Ct. at 971. Additionally, even if we were to accept defendant's contention that the procedure was unnecessarily suggestive, the degree of suggestiveness was easily outweighed by sufficient evidence of reliability. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977).

## II.

### JUROR NONDISCLOSURE

Defendant contends next that juror Beserra's incorrect answers on the jury questionnaire and his failure to respond to an oral question during *voir dire* so prejudiced defendant's right to exercise peremptory challenges that the jury selection process and fairness of the trial were irreparably impaired, requiring a new trial.

Manuel Beserra served as jury foreman in defendant's trial. One question on the jury questionnaire asked, "Is any member of your family at present or has any member or employee of your family in the past been a member or employee of any law enforcement agency?" Mr. Beserra checked the "no" box. In fact, his brother had recently retired after serving more than thirty years as an Albuquerque police officer. Another question asked the nature of any previous jury experience. Mr. Beserra checked "criminal," when in fact he had only served as a juror in a civil trial. Finally, at *voir dire* the jurors were asked as a group, "Are there any persons on this panel who have either a relative or a close friend who might work for a police department either in Albuquerque or some other city?" Eight people responded. Although the question was phrased in the present tense, one member of the venire responded that his brother was a retired military police chief. Beserra remained silent.

After trial and upon discovering the undisclosed information about Beserra, defendant moved for a new trial. The trial court held an evidentiary hearing. Beserra testified that he didn't know why he had answered the questionnaire incorrectly, except that he remembered being in a hurry to finish filling it out. He asserted that he did not remember the written question about family associations with law enforcement. The defense elicited testimony from him that "years ago" his brother had told him that he would not qualify as a juror in a criminal case because of his brother's profession. He also testified, however, that he had not answered the questions incorrectly in order to qualify for the jury, and stated that he had not particularly wanted to serve on the jury. Beserra's testimony regarding the oral *voir dire* question was conflicting. On direct questioning by defense counsel, Beserra indicated that he had heard the question, but

---

**2.** In addition to the record on appeal docketed by defendant, this court has reviewed the relevant portions of the tape recordings of the state trial court proceedings.

didn't respond because his brother was retired and no longer on the police force. On cross-examination, he testified that he did not recall hearing the question, but would have responded if he had heard it. Additionally, Beserra testified that when his brother was on the police force, they had never discussed police investigations, that he did not know whether his brother had any connection with defendant's case, and that he would not give greater weight to the testimony of a police officer. Beserra also stated that he recalled being asked whether he could try the case according to his oath and being instructed to base his decision on the law and evidence presented. Upon completion of the hearing, the trial court held that the fact that Mr. Beserra had a brother who was a former police officer had "nothing to do with this case," and that defendant had failed to show "actual prejudice."

Defendant does not contend in this appeal that the undisclosed information alone constituted sufficient grounds to excuse Mr. Beserra for cause. Instead defendant argues that his right to exercise peremptory challenges was so impaired that he was denied a fair trial. We are not persuaded that defendant's constitutional right to a fair and impartial jury was denied.

Although a prima facie showing of impairment of a party's peremptory challenges may entitle that party to an evidentiary hearing, *see Robinson v. Monsanto Co.*, 758 F.2d 331, 334 (8th Cir.1985); *McCoy v. Goldston*, 652 F.2d 654, 658 (6th Cir.1981), "[t]he fact that [the] juror ... might have been peremptorily challenged by defendant is not alone sufficient to reverse defendant's conviction," *Williams v. United States*, 418 F.2d 372, 377 (10th Cir. 1969). In *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984), the Supreme Court stated that "it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination."

"A party who seeks a new trial because of non-disclosure by a juror during *voir*

*dire* must show actual bias," *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984), either "by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed," *id.* (quoting *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976)). "[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982). At such a hearing, evidence of dishonesty and the subject matter of the nondisclosed information are relevant to the inquiry into alleged partiality. *See Perkins*, 748 F.2d at 1532.

■ Defendant does not contend that he was not afforded a full, fair, and adequate evidentiary hearing. Following the post-trial hearing, the state trial court concluded that defendant had failed to show "actual prejudice." The context of this conclusion and the authority cited by the trial court indicate that this was a factual finding that juror Beserra was not partial. *Accord New Mexico v. Baca*, 99 N.M. 754, 664 P.2d 360, 362 (1983). As such, it is entitled to the presumption of correctness. *See Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984). Additionally, this finding is supported by the record. The oral question at *voir dire* was framed in the present tense. Whether or not Mr. Beserra heard it, he had no objective duty to respond because his brother was no longer a police officer. Although Mr. Beserra answered falsely two written questions, evidence adduced at the post-trial hearing supports the trial court's finding that Beserra was not actually prejudiced. Upon careful review, we conclude that defendant has failed to demonstrate that Beserra was partial or that defendant was denied his constitutional right to be tried by an impartial jury.

### III.

### PROSECUTOR'S CROSS–EXAMINATION

During cross-examination of defendant, the following colloquy occurred:

"PROSECUTOR: You indicated to us that you'd been in the penitentiary, isn't that right?

DEFENDANT: In 1972 I was convicted, that's right.

PROSECUTOR: Did you ever hear of the name Nuestra Familia?

DEFENDANT: What has that got to do with what I'm on trial today?

PROSECUTOR: Would you answer my question please?

DEFENDANT: No, I will not.

[DEFENSE COUNSEL AND PROSECUTOR BEGIN TO TALK AT THE SAME TIME.]

JUDGE: Approach the bench, approach the bench.

[INAUDIBLE BENCH CONFERENCE]

PROSECUTOR: Are you a member of that group?

DEFENDANT: Member of what group?

PROSECUTOR: Nuestra Familia.

DEFENDANT: No, I'm not a member of anything.

PROSECUTOR: No further questions."

Trial Tape 10A (Sept. 16, 1982). Defendant contends that the Nuestra Familia organization is well-known in the state and that the questions raised the specter of violent organized crime, thus denying him a fair trial. We disagree.

■ First, this case does not involve prosecutorial misconduct. The trial court apparently concluded, after a lengthy bench conference, that the prosecutor had a permissible basis for asking the questions. The prosecutor framed the questions in a non-accusatory manner, made no comments about the character of the organization, and ceased questioning when defendant denied membership in the organization. Second, the state supreme court specifically found that the reference did not raise "the implied existence of an organized criminal entity." *Baca* 664 P.2d at 364. This factual finding is entitled to a presumption of correctness, 28 U.S.C. § 2254(d), which defendant has failed to rebut with evidence. Third, although the record is silent on whether the subject matter was relevant, even assuming that it was not, the record does not establish that the questions "so tainted the entire trial that it denied [defendant] that fundamental fairness which is the essence of due process." *Johnson v. Rose*, 546 F.2d 678, 679 (6th Cir.1976) (per curiam).

Affirmed.