951 F.2d 1261
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert K. WALL, Jr., Petitioner-Appellant,
v.
Dan MORIARTY, Warden, Respondent-Appellee.
 No. 90-2268.
 United States Court of Appeals, Tenth Circuit.
 Dec. 17, 1991.
 
 Before STEPHEN H. ANDERSON, BARRETT and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner, Robert Wall, was tried in state court and convicted on a jury verdict of armed robbery and false imprisonment. A post-trial hearing was held on Wall's motion for a new trial based on ineffective assistance of his two trial attorneys for their failure to investigate alibi witnesses. Following an unsuccessful state appeal,[1] Wall sought federal habeas relief pursuant to 28 U.S.C. § 2254. The federal magistrate judge recommended that the petition be dismissed with prejudice. The federal district court adopted the recommendation of the magistrate judge, dismissed with prejudice Wall's petition, and ordered that no certificate of probable cause be issued.
 
 
 3
 On appeal, Wall contends that he was denied a fair trial in the state court because of (1) ineffective assistance of counsel, (2) prosecutorial misconduct, (3) the state's failure to present a fair photo array, (4) the refusal of his jury instruction on identification testimony, and (5) insufficiency of the evidence. We affirm, concluding that Wall has not established any errors that " 'deprived him of fundamental rights guaranteed by the Constitution of the United States.' " Baca v. Sullivan, 821 F.2d 1480, 1481 (10th Cir.1987) (quoting Brinlee v. Crisp, 608 F.2d 839, 843 (10th Cir.1979), cert. denied, 444 U.S. 1047 (1980)).
 
 I. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 4
 Wall first claims that he was denied his Sixth Amendment right to effective assistance of counsel at his trial. He asserts further that the federal district court erred in denying his request for an evidentiary hearing on this claim.
 
 
 5
 The federal district court was not required to hold a hearing because Wall received a full and fair post-conviction evidentiary hearing in the state court.[2] See Townsend v. Sain, 372 U.S. 293, 312-314 (1963); Phillips v. Murphy, 796 F.2d 1303, 1304 (10th Cir.1986). The record of the state court hearing on Wall's claim of ineffective assistance of his attorneys is devoid of any recognized circumstances under which a federal court must grant an evidentiary hearing. See Townsend v. Sain, 372 U.S. at 313. Furthermore, Wall does not allege that any of those circumstances are present here.
 
 
 6
 The decision not to hold a hearing was, therefore, within the discretion of the district judge. Id. at 318. We conclude that the federal district court did not abuse its discretion by denying Wall's request for an evidentiary hearing.
 
 
 7
 "In order to prevail [on a claim of ineffective assistance of counsel], the defendant must show that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (citations omitted). "[T]he proper standard for attorney performance is that of reasonably effective assistance." Strickland v. Washington, 466 U.S. 668, 687 (1984).
 
 
 8
 "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The burden of establishing purported deficiencies of counsel must be carried by the petitioner. United States v. Miller, 907 F.2d 994, 1002 (10th Cir.1990).
 
 
 9
 "[O]n an ineffective assistance of counsel claim, under Strickland, we apply a plenary standard of review except for historical facts." Capps v. Sullivan, 921 F.2d 260, 263 (10th Cir.1990) (citing United States v. Miller, 907 F.2d at 996-97). "[W]hen examining a state court's findings of historical fact, the federal court in a habeas case generally must apply a 'presumption of correctness' standard, pursuant to 28 U.S.C. § 2254(d)." Phillips v. Murphy, 796 F.2d at 1306. That presumption is equally applicable to state appellate court findings of fact. Baca v. Sullivan, 821 F.2d at 1482 (citing Sumner v. Mata, 455 U.S. 591, 592-93 (1982) (per curiam)).
 
 
 10
 In this case, Wall claims that his trial attorneys were ineffective because they failed to investigate alibi evidence. Wall provided to his first attorney, Erica Bartlett, the names of eight or nine purported alibi witnesses. He provided additional witnesses' names to Jack Love, his second attorney.
 
 
 11
 Wall apparently claims that Bartlett did not investigate the witnesses. Bartlett testified at the post-trial hearing that she assigned an investigator to interview the witnesses. She made sure that the investigator had asked each witness if he or she could provide an alibi for Wall on the date of the crime, October 27, 1984, but none could do so.
 
 
 12
 Wall's complaints about Love's trial representation are that he did not call witnesses from New Orleans who could have established that Wall had a full beard at the end of October 1984, within a few days of the date of the crime of October 27, 1984. Love also did not call witnesses from Chicago who could have established that Wall had a full beard on November 8, 1984. Wall contends that the testimony establishing that he had a beard at the time of the crime was critical in light of the statements of both eyewitnesses that the robber was clean shaven.
 
 
 13
 According to Love, the decision not to present the evidence that Wall had a beard at the time of the crime was a tactical one, concurred in by Wall. In denying post-conviction relief, the state trial court found that both defender attorneys contacted at least some of the witnesses and that whatever evidence the witnesses could furnish was available before trial. Tape 3, Hr'g on Mot. for New Trial, 7-31-86. The state court of appeals affirmed Wall's appeal of his conviction and the denial of his post-conviction motion, noting that Wall had agreed with Love's strategy. R. vol. II, New Mexico Court of Appeals' Mem. Op. at 4. Rather than take the chance that the robbery victim, Paul Baca, would give a plausible explanation of his initial statement that the robber had a beard, Love adopted the strategy of challenging Baca on his inconsistent descriptions of the robber. Furthermore, Love opted to avoid all evidence linking Wall to Chicago because the car stolen in this crime was later seen in Chicago.
 
 
 14
 Wall asserts that Love's representation was also inadequate because he did not call witness Debra Alfred at trial. Wall contends here that Alfred would have testified that Wall gave her a ride home in New Orleans on the evening of October 26, 1984, a few hours before the crime was committed in New Mexico. In fact, Wall admitted at the hearing that Alfred could not remember when he had given her the ride home, except that it was within three days of the robbery for which Wall was convicted. Tape 1, Motion, 7-31-86.
 
 
 15
 Wall further asserts that Love's representation was ineffective because Love did not follow up on Bartlett's investigation. As stated above, the decision not to pursue testimony from the witnesses proffered by Wall was a tactical one. Therefore, further investigation of an abandoned claim was unnecessary. See Strickland v. Washington, 466 U.S. at 690-91 (" [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Thus, Wall has failed to overcome the presumption that the state courts' findings were correct. He has not met his burden of proving that the representation of either Bartlett or Love fell below an objective standard of reasonableness.
 
 
 16
 Even if his attorneys had committed unprofessional error, Wall has failed to establish that the result of the proceeding would have been different if they had investigated further or called the proffered witnesses. None of the witnesses, including Alfred, could provide an alibi for Wall at the time of the crime. Wall did not establish that the evidence of his beard would have changed the result of the trial. Obviously, the jury did not determine guilt exclusively on the accuracy of Baca's initial physical description of the robber. Baca had first said that the robber's eyes were blue. Wall's eyes are brown. In spite of that discrepancy, Wall was convicted.
 
 
 17
 Wall has not met his required burden of proving that counsel's representation was unreasonable under prevailing professional norms. Further, even if the representation had been inadequate due to the alleged failure to investigate, Wall did not establish sufficient prejudice to warrant a new trial.
 
 II. PROSECUTORIAL MISCONDUCT
 
 18
 Wall asserts three occasions of prosecutorial misconduct, resulting in a denial of his due process rights to a fair trial. The state trial court and court of appeals denied relief, finding no misconduct by the prosecutor. R. vol. II, New Mexico Court of Appeals' Mem.Op. at 5-7.
 
 
 19
 A. Prosecutor's Comment to Witness Prior to Photo Identification
 
 
 20
 After Baca had selected Wall from one photo array and before he was to view a second photo array, the prosecutor telephoned Baca and told him that the offender might look different in the photographs he was to see than on the night of the incident. Wall contends that the statement informed Baca that the offender's photograph would be in the array and alerted Baca that he should select a photograph showing a person who looked quite different from the person who robbed him. According to Wall, the prosecutor's statement made the second photo identification unduly and unnecessarily suggestive, resulting in a denial of due process.
 
 
 21
 We review de novo the federal district court's conclusion regarding the constitutionality of identification procedures. Archuleta v. Kerby, 864 F.2d 709, 710-11 (10th Cir.), cert. denied, 490 U.S. 1084 (1989). Here, the photographic identification procedure was not unconstitutionally suggestive, considering the "totality of surrounding circumstances." Simmons v. United States, 390 U.S. 377, 383 (1968).
 
 
 22
 Wall does not assert that the photo arrays themselves were suggestive. Prior to the state court trial, the defense conceded that the photo arrays were acceptable. Tape 1, Motions, 2-19-86. Wall also does not claim that the first identification procedure at which Baca identified Wall was unnecessarily suggestive. The prosecutor's statement before the second photo lineup did not direct Baca to select any particular photograph. Wall has therefore failed to demonstrate that the second identification procedure was impermissibly suggestive.
 
 
 23
 Even if the identification procedure had been suggestive, "[t]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." Manson v. Brathwaite, 432 U.S. 98, 106 (1977) (footnote omitted). In this case, Baca had ample opportunity to observe the robber during the commission of the crime, Tape 4, Jury Trial, 3-5-86; Baca's attention was focused on the robber, id.; Baca's prior description of Wall was quite accurate, Tape 8, Jury Trial, 3-5-86; Baca was certain of his identification of Wall at the first photo lineup and at trial, Tape 4, Jury Trial, 3-5-86; and the length of time between the crime and the first identification, seven months, was not too long. See Neil v. Biggers, 409 U.S. 188, 199-201 (1972) (factors to be considered in evaluating the likelihood if misidentification; seven months between crime and identification is not too long). Therefore, even if we were to accept Wall's contention that the procedure was unnecessarily suggestive, the evidence of reliability outweighs any suggestiveness.
 
 
 24
 B. Prosecutor's Introduction of False Testimony
 
 
 25
 Wall next contends that the prosecutor knowingly introduced false testimony in violation of Wall's due process rights to a fair trial. We review de novo the mixed question of fact and law of whether the testimony constitutes prejudice of constitutional dimension. Nichols v. Sullivan, 867 F.2d 1250, 1253 (10th Cir.), cert. denied, 490 U.S. 1112 (1989).
 
 
 26
 Wall asserts that the prosecutor intentionally elicited false testimony from Baca that the robber had threatened to kill him. Wall claims that the testimony was false because the robber said that he did not want to hurt Baca. We agree with Respondent's theory that by saying, "I don't want to hurt you," the robber could have meant that he would hurt Baca if necessary. Thus, the trial testimony was not false.
 
 
 27
 Even if this were false, there is no "reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (footnote omitted). The existence of a threat to kill was neither necessary to establish an element of either of the crimes for which Wall was convicted, nor pertinent to a disputed issue in the case. See N.M.Stat.Ann. § 30-16-2 (elements of crime of armed robbery); N.M.Stat.Ann. § 30-4-3 (elements of crime of false imprisonment). Consequently, Wall was not prejudiced by the evidence.
 
 
 28
 C. Prosecutor's Comment on Wall's Right to Remain Silent
 
 
 29
 Wall maintains that two of the prosecutor's remarks during closing arguments impermissibly commented on his right not to testify at trial. Prosecutorial comment on the accused's failure to testify at trial violates the Fifth Amendment guarantee against self-incrimination. Griffin v. California, 380 U.S. 609, 615 (1965); accord United States v. Barton, 731 F.2d 669, 674 (10th Cir.1984). "The test for determining if there has been an impermissible comment on a defendant's right to remain silent ... is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment' on the defendant's right to remain silent." United States v. Morales-Quinones, 812 F.2d 604, 613 (10th Cir.1987) (quoting United States v. Barton, 731 F.2d at 675). The court will not find manifest intent if some other explanation for the prosecutor's remark is just as plausible. United States v. Mora, 845 F.2d 233, 235 (10th Cir.), cert. denied, 488 U.S. 995 (1988). The issue of a prosecutor's comment on an accused's silence is a mixed question of fact and law subject to de novo review by this court. See Nichols v. Sullivan, 867 F.2d at 1253.
 
 
 30
 Wall complains of the following two remarks: "What then is the defense?" and "How does Mr. Wall explain...." Viewing the comments in the context of the entire argument and the evidence adduced at trial, it is clear that neither comment referred to Wall's decision not to testify.
 
 
 31
 The prosecutor's first statement was, "The state having presented evidence to persuade you beyond a reasonable doubt that these crimes occurred, what, then is the defense?" Tape 13, Jury Trial, 3-5-86. She next summarized the testimony of one of the defense witnesses. Then she said, "So now we have the defense. The defense is to find minute inconsistencies and to focus your attention on those inconsistencies." Id. From there, the prosecutor discussed the inconsistencies in the evidence that had been raised by defense counsel. Thus, the context of the remark reveals that it was a comment on the defense strategy, not on the absence of Wall's testimony.
 
 
 32
 The second comment was, in fact, "Now, how does Mr. Love [defense counsel] explain the fact that two different people over a period of over a year pick out photographs that are all photographs of the same person but quite different?" Tape 14, Jury Trial, 3-5-86 (emphasis added). The remark was made during the rebuttal closing argument in the context of the prosecutor's discussion of the identification of Wall. The argument was not " 'of such character that the jury would naturally and necessarily take it to be a comment' on the defendant's right to remain silent." United States v. Morales-Quinones, 812 F.2d at 613 (quoting United States v. Barton, 731 F.2d at 675). Thus, Wall has not established violation of his Fifth Amendment rights.
 
 III. PHOTO IDENTIFICATION PROCEDURES
 
 33
 Wall next asserts that the identification procedures employed by the state were unfair because the second of the two photo arrays shown to Baca did not contain a photograph of Wall's half brother, a person with blue-green eyes who resembled Wall. "[T]he ultimate question as to the constitutionality of the pretrial identification procedures ... is a mixed question of law and fact." Sumner v. Mata, 455 U.S. at 597. Mixed questions of law and fact are reviewed de novo. Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir.1989), cert. denied, 110 S.Ct. 1490 (1990).
 
 
 34
 Wall does not claim that the photo arrays were suggestive or unfair. In fact, Wall's attorney conceded that the arrays shown to the witnesses was acceptable. Tape 1, Motions, 2-19-86. Furthermore, Baca testified that the eye color made no difference in his identification of Wall as the robber. Tape 4, Jury Trial, 3-5-86.
 
 
 35
 Wall contends that an accused's federal constitutional rights are violated when a photo lineup does not include a possible suspect who resembles the accused. Wall cites no law in support of this argument, and we can find none. Moreover, we believe the argument is without merit.
 
 IV. JURY INSTRUCTIONS
 
 36
 Wall alleges that his right to due process was violated by the state trial court's refusal of his tendered jury instruction concerning the reliability of identification testimony, patterned after an instruction given in the case of United States v. Telfaire, 469 F.2d 552, 558 (D.C.Cir.1972). Generally, jury instructions do not form the basis for habeas corpus relief unless the improper instructions resulted in a " 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' " Williams v. Lockhart, 736 F.2d 1264, 1267 (8th Cir.1984) (quoting Brouillette v. Wood, 636 F.2d 215, 218 (8th Cir.1980), cert. denied, 450 U.S. 1044 (1981)); accord Brinlee v. Crisp, 608 F.2d at 854 ("Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.").
 
 
 37
 Here, the jury was specifically instructed on credibility of witnesses, R. vol. II, Jury Instructions, at 0191, as well as on burden and quantum of proof, Id. at 0189. Considering the jury instructions as a whole, Wall has failed to show that the refusal of his tendered instruction "so infected the entire trial that he was deprived of his right to due process." Williams v. Lockhart, 736 F.2d at 1267 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).
 
 V. SUFFICIENCY OF THE EVIDENCE
 
 38
 Finally, Wall contends that the evidence was insufficient to support his convictions for armed robbery and false imprisonment. "Sufficiency of the evidence can be considered to be a mixed question of law and fact" to be reviewed de novo. Case v. Mondragon, 887 F.2d at 1392, 1393. "In federal habeas corpus proceedings, when a criminal defendant challenges his state conviction on sufficiency of the evidence grounds, the defendant is entitled to habeas corpus relief only if 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' " Chatfield v. Ricketts, 673 F.2d 330, 332 (10th Cir.) (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)), cert. denied, 459 U.S. 843 (1982). It is the jury's function as trier of fact to weigh the evidence and determine whom to believe. United States v. Thurston, 771 F.2d 449, 452 (10th Cir.1985).
 
 
 39
 Wall contends that the identification testimony of the two eyewitnesses was constitutionally infirm because of inconsistencies and uncertainties in their respective identifications of Wall. Because the jury's determination of witness credibility is a question of fact, and none of the exceptions of § 2254(d) apply, the jury's determination will be accorded a presumption of correctness. Case v. Mondragon, 887 F.2d at 1392. Wall has failed to overcome the presumption.
 
 
 40
 Under New Mexico law, armed robbery is "the theft of anything of value from the person of another, or from the immediate control of another, by use or threatened use of force or violence" while "armed with a deadly weapon." N.M.Stat.Ann. § 30-16-2. The evidence adduced at trial established that Wall, as properly identified by Baca and witness David Arambula, took Baca's watch, diamond ring, and gold chain. Tape 4, Jury Trial, 3-5-86. Wall threatened to physically harm Baca. Id. During the incident, Wall was armed with a gun. Id. We conclude that the evidence was sufficient to sustain the conviction for armed robbery.
 
 
 41
 The crime of false imprisonment "consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." N.M.Stat.Ann. § 30-4-3. Here, testimony at trial demonstrated that Wall confined Baca against his will by detaining him at his office. Then Wall tied Baca's hands with an electrical cord. Id. A rational trier of fact could conclude that Wall knew he had no authority to confine and restrain Baca and that he did so intentionally. Thus, the evidence is sufficient to sustain the conviction for false imprisonment.
 
 CERTIFICATE OF PROBABLE CAUSE
 
 42
 Wall applies to this court for a certificate of probable cause. Determining his issues capable of debate, we grant his Application for a Certificate of Probable Cause. See Harris v. Allen, 929 F.2d 560, 561 (10th Cir.1991). The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 State v. Wall, No. 9500 (N.M.App. June 9, 1987), cert. denied, No. 17, 201 (N.M. August 3, 1987). Record, vol. II, pleadings on state appeal
 
 
 [2]
 In addition to the record on appeal, this court has reviewed the relevant portions of the tape recordings of the state trial and post-conviction proceedings