F I L E D
United States Court of Appeals
Tenth Circuit

DEC 14 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

STEVIE MANZANARES,

      Plaintiff-Appellant,

v.

VAUGHN ALLEN, an individual, and
SALT LAKE COUNTY,

      Defendants-Appellees.

No. 97-4102
(D.C. No. 93-CV-00010-B)
(District of Utah)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, Circuit Judge, **ANDERSON**, Circuit Judge, and **McWILLIAMS**,
Senior Circuit Judge.

This is an action under 42 U.S.C. § 1983 to recover damages for violation of the

plaintiff's civil rights.

Stevie Manzanares, Arthur (Chico) Chavez and Steve Early, all under 21 years of

age (Manzanares was 18), were going to a party on August 7, 1992 and decided to get

some beer to take to the party. Accordingly, they drove to a Smith's food store in West

Valley City in Salt Lake County, Utah. Manzanares was driving his sister's Camaro. A

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

deputy sheriff for Salt Lake County thought they were acting suspiciously and began watching them. At Smith's, Early announced he would steal the beer instead of buying it, and told Manzanares and Chavez to wait for him in the car. While the two waited for Early to return, Chavez got into the back seat, and Manzanares continued to sit in the driver's seat, behind the steering wheel, sipping a can of beer. Meanwhile, the deputy who first spotted the three called for assistance. Other deputies soon arrived at Smith's, including Vaughn Allen. As Early exited Smith's with a case of beer, Allen and his partner, Kent Mattingley, pulled their squad car directly in front of the Camaro. In the meantime, Manzanares had placed the can of beer under his car seat.

Allen and Mattingley exited their patrol car and took positions on opposite sides of the Camaro with their guns drawn, Allen on the passenger's side, which was vacant, and Mattingley on the driver's side. After some preliminary orders to "get their hands up," and the like, Allen shot Manzanares in the head, the bullet entering the right side of Manzanares' head, ricocheting off the lower portion of his brain and exiting the left side of his face. Allen testified at trial that he fired because "I saw his hand coming up and I saw a flash come off his hand and I thought it was [a] gun, a chrome gun, and I thought he was going to shoot Mattingley and I said don't and I fired." No weapons were found in the car.

Based on the foregoing events, Manzanares, pursuant to 42 U.S.C. § 1983, filed a civil rights action in a Utah state court against Salt Lake County and Vaughn Allen,

alleging, generally, a violation of his rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures. Pursuant to 28 U.S.C. § 1441(b), the action was later removed to the United States District Court for the District of Utah. The two defendants filed a motion for summary judgment. The motion of Salt Lake County was not resisted by Manzanares and was granted by the district court. The motion as it related to Allen was denied, the district court stating that there "were disputed issues of material fact."

As concerns Allen, the matter came on for trial in July 1996, and resulted in a jury verdict in favor of Manzanares against Allen, awarding him the stipulated sum of $250,982.00 for past and future medical expenses and $304,778.00 for past and future economic losses, making a total damage award in the amount of $555,760.00. The jury, which consisted of twelve members, awarded him nothing for his pain and suffering. Judgment was duly entered on that verdict.

Allen thereafter filed a motion for new trial, alleging that a woman who served on the jury had failed to honestly answer a material question propounded to the panel by the district judge on voir dire. The motion was ultimately supported by several affidavits, and counter affidavits were later filed. The district court eventually held that there was juror misconduct which was prejudicial and granted the motion. A second jury trial ensued in April 1997 which resulted in a jury verdict in favor of Allen. A motion for new trial was filed and denied. Judgment was then entered in favor of Allen, from which Manzanares

now prosecutes the present appeal.

On appeal, Manzanares urges two grounds for reversal: (1) the district court erred in granting Allen's motion for new trial based on juror misconduct, and asks that the judgment entered on the verdict of the second jury be vacated and that the verdict returned by the first jury be reinstated and judgment entered thereon; and, alternatively, (2) the district court committed trial error regarding the admissibility of evidence in the second trial which requires a third trial. We should first address the question of whether the district court erred in granting Allen's motion for new trial.

Juror Tulaire Foreman served on the jury in the first trial of this matter, though she was not the Foreperson! During the district judge's voir dire of the panel, which included Ms. Foreman, the judge propounded to the entire panel the following question:

> [T]his case involves a young man at a Smith's store who was involved with friends in what appears to have been an effort to steal beer from the store and the police came and an incident occurred in which the policeman, as I indicated earlier, drew his weapon and fired. That is generally the facts. It involves a young man by the name of Manzanares. He is Hispanic. I would like to know if any of you have anything you would like to point out to the Court or feel that you have anything in your background or past that might make it difficult for you to sit in judgment of a case that involves a minority youth, Mr. Manzanares, his Hispanic origin and the police shooting incident. Any hands?
> I am not suggesting anyone has a bias or a prejudice in that regard, but I would like to know if the fact that there is a Hispanic young man involved here would cause any of you to want to approach the bench and tell me anything about your feelings that might be important to us in picking a jury. Raise your hand if anyone is in that situation. (Emphasis added.)

No member of the panel, which, as indicated, included Ms. Foreman, responded to the foregoing inquiry by raising a hand, nor was the matter thereafter in any manner pursued by counsel, who were invited by the court "to follow up with anything that you would like in that area." As stated, Ms. Foreman was accepted by counsel and served on the first jury which returned a verdict in favor of Manzanares and against Allen, awarding damages in an aggregate amount of $555,760.00.

As indicated, after the jury returned its verdict, counsel for Allen filed a motion for new trial on the ground that juror Foreman failed "to honestly answer a material question on voir dire even though an honest answer to the question would have provided a valid basis for defendant to challenge Ms. Foreman for cause based upon her bias." That was the only matter set forth in the motion. In support of the motion for new trial counsel attached the affidavit of Kathy Diamant, an employee with the Salt Lake County Sheriff's Department. In that affidavit Diamant stated that "according to police reports, on September 24, 1994, Tulaire Foreman's son, Torrie Lambrose, shot and killed another gang member and was shot and killed."

Attached to Ms. Diamant's affidavit were excerpts from her interviews with four of the other jurors who served on the jury with Ms. Foreman, as well as excerpts from interviews with two of Ms. Foreman's neighbors.[1] Such interviews indicated, *inter alia,*

_____

[1] The interviewees were identified by numbers, but not names. Later, upon request, the interviewees were identified by name. Still later, defense counsel filed affidavits of some, though not all, of the interviewees.

that some two years prior to her jury service in the instant case, Ms. Foreman's son was involved in a gang shootout at a different Smith's food store in the Salt Lake County area wherein he shot and killed another and was himself shot and killed.

Counsel for Manzanares filed a motion to strike the affidavit of Ms. Diamant on the grounds that it contained inadmissible hearsay and further that it was inadmissible under Fed. R. Evid. 606(b). At the same time, counsel filed an affidavit of Ms. Foreman wherein she stated that she had answered all questions put to her by the judge "truthfully," that she had followed the court's instructions, kept an open mind, and did not decide how she would vote until after the case was submitted to the jury.

Counsel for Allen later asked for an evidentiary hearing on the motion for new trial, which request was denied. After hearing, the district court, on December 5, 1996, granted Allen's motion for new trial. That order, in its entirety, reads as follows:

> Defendant's Motion for New Trial came on for hearing before the Court, the Honorable Dee V. Benson presiding, on October 28, 1996. Plaintiff was present and represented by counsel, Colin P. King and Edward B. Havas, and defendant was present and represented by counsel, Patricia J. Marlowe and Sirena Wissler. The Court having considered the memoranda filed by the parties and having heard the arguments of counsel and it appearing to the Court that Juror Tulaire Foreman failed to honestly answer a material question on voir dire and that if she had done so, she would have been removed for cause. It further appearing to the Court that Ms. Foreman's presence on the jury deprived defendant of a fair and impartial trial and that defendant should be granted a new trial.
> NOW THEREFORE, IT IS HEREBY ORDERED that

- 6 -

defendant is granted a new trial.[2]

It is agreed that the question propounded by the district court to the jury panel on voir dire to which Ms. Foreman did not respond by raising her hand, is as set forth above. Based solely on Ms. Foreman's failure to raise her hand in response to that particular question, counsel alleged in the motion for new trial that Ms. Foreman failed "to honestly answer a material question on voir dire even though an honest answer to the question would have provided a valid basis for defendant to challenge Ms. Foreman for cause based upon her bias." We do not believe that Ms. Foreman's failure to "raise her hand" was a "dishonest answer" to the inquiry as postulated by the court.

Our reading of the court's inquiry of the jury was that the court wanted to ascertain if any of the jurors in the jury box would find it "difficult for you to sit in judgment of a case that involves a minority youth, Mr. Manzanares, his Hispanic origin and the police shooting incident. Any hands?" In other words, the district court wanted to ascertain if any potential juror might have any bias, for or against, Manzanares because he was Hispanic. By not raising her hand, Ms. Foreman indicated that she had no bias, either for or against Manzanares, because he was Hispanic. In this regard, there is nothing in the present record to indicate that Ms. Foreman, in fact, would be biased, either for or against, Manzanares because of his racial origin. And the fact, which is apparently admitted by

---

[2]Prior to his order granting a new trial, the district judge had stated to counsel that he believed that Ms. Foreman's affidavit was "accurate" and that she didn't "intentionally lie about anything."

both parties, that two years prior thereto Ms. Foreman's son was shot and killed in a gang fight, coincidentally at another Smith's food store, certainly is, itself, non-probative of racial bias. One does not follow the other. The record simply does not support the district court's finding in its order granting new trial that Ms. Foreman "failed to honestly answer a material question on voir dire and that, if she had done so, she would have been removed for cause." On the basis of the court's inquiry, as framed by the court, Ms. Foreman's failure to "raise her hand" does not even tend to show that she "failed to answer a material question." We should note again that neither the court nor counsel thereafter pursued the question of racial bias. It is on this basis that we reverse.

In support of our resolution of this matter, see, for example, *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548 (1984); *Gonzales v. Thomas,* 99 F.3d 978 (10th Cir. 1996), *cert. denied,* 117 S.Ct. 1342 (1997); *Baca v. Sullivan,* 821 F.2d 1480 (10th Cir. 1987); and *Brown v. United States,* 356 F.2d 230 (10th Cir. 1966).

In *McDonough Power*, Billy Greenwood and his parents sued McDonough Power Equipment, Inc. ("McDonough") to recover damages for injuries sustained by Billy Greenwood when his feet came in contact with the blades of a riding lawnmower manufactured by McDonough. A jury returned a verdict for McDonough, and judgment was duly entered thereon. The Greenwoods' motion for new trial, which only "tangentially" referred to a juror's "failure to respond" as grounds for new trial, was denied. On appeal, we, nonetheless, proceeded directly to the question of the juror's

failure to respond to a question posed on voir dire by plaintiffs' counsel. That question was, in effect, whether any member of the panel had "yourself, or had any members of your immediate family," sustained by accident a severe personal injury. Juror Payton did not in any way respond to that question, though it would appear that, in fact, his son had been previously injured in an explosion of a truck tire, though he also indicated that he felt such was only a minor accident. On appeal, we reversed the district court and held that Payton's failure to respond to that question on voir dire had prejudiced the plaintiffs' right to a peremptory challenge. *Greenwood v. McDonough Power Equip., Inc.,* 687 F.2d 338 (10th Cir. 1982). On certiorari, the Supreme Court reversed us, and remanded for further proceedings. *McDonough Power Equip., Inc., v. Greenwood,* 464 U.S. 548 (1984). In so doing, the Supreme Court quoted with approval its prior cases to the effect that a litigant is only entitled to a "fair trial"-- not a "perfect one" -- for there are "no perfect trials." *Id.* at 553. At the same time, the Supreme Court recognized that a "fair trial" encompasses "an impartial trier of fact." *Id.* at 554. The Court then went on to speak as follows:

> To invalidate the result of a 3-week trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination. Whatever the merits of the Court of Appeals' standard in a world which would redo and reconstruct what had gone before upon any evidence of abstract imperfection, we think it is

> contrary to the practical necessities of judicial management reflected in Rule 61 and § 2111. <u>We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.</u> The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial. *Id.* at 555-56. (Emphasis added.)

In *Gonzales,* 99 F.3d at 978*,* we affirmed a district court's holding that a juror in a rape case did not fail to answer honestly a question put to her on voir dire when she answered "no" to a question as to whether she or any member of her immediate family had ever been involved in a similar type of incident, i.e., rape, when, in fact, as it was later developed, she, herself, had been "date raped" some 24 years prior, stating that such did not meet the "McDonough test." In that case we also affirmed the district court's holding that there had been no showing of actual bias, or of facts and circumstances which would permit implying bias. *Id.* at 986, 991. (In the motion for new trial filed in the present case, counsel did not allege, or otherwise suggest, actual or implied bias.)

In *Baca,* 821 F.2d at 1480, the jury foreman failed to disclose both on a jury questionnaire and on voir dire that he had a brother who had recently retired from the Albuquerque police department, even though he had been asked whether any member of his family, in the present or past, had been a member of a law enforcement agency. *See id.* at 1482. The district court denied a motion for new trial based on the juror's response and, on appeal, we affirmed.

In *Brown,* 356 F.2d at 230, the defendant was convicted of second degree murder. The jury panel, on voir dire, was asked if any of them, or any member of their immediate families, had ever been the victim of an attack upon their person, to which no one responded. Later, it developed that the brother of one of the jurors who served on the jury had been murdered. The district court denied the defendant's motion for new trial based on the juror's failure to disclose, and on appeal we affirmed. In so doing, we spoke as follows:

> There is no contention here that actual bias has been shown. Rather, the issue is whether the circumstances of this case compel an imputation of inherent bias to the juror as a matter of law. Certainly the voir dire oath administered to potential jurors obligates them fully to tell the truth. However, no reason appears for concluding that the juror was in fact not fully responsive to the actual interrogatory, which referred to the juror's 'immediate family.' Such a term is indeed ambiguous, for depending upon such circumstantial variables as age and marital status, it can import different meanings to different individuals. Defense counsel was free to explain to the jury what was meant by 'immediate family,' and could have expanded his inquiry to include 'family' and 'relatives,' but he elected to pursue the point no further. It cannot be presumed that the juror's failure to respond to the question was not proper, and an inference of intentional or inadvertent nondisclosure is unwarranted.

*Id.* at 232-33.

We note that in each of the four cases above cited, the prospective juror arguably failed to correctly respond to a voir dire question that was material. In other words, the inquiry was properly framed to elicit from the prospective juror a response which he, or

- 11 -

she, did not make, and probably should have. However, in each case, it was held that such, under the circumstances of the particular case, did not require a new trial. In the instant case the inquiry of the district court was not so framed as to elicit the fact that Ms. Foreman's son had been shot and killed two years earlier in a gang shooting, and counsel, though invited, did not elect to pursue the matter which was posed by the court's inquiry concerning possible racial bias. It is on this general basis that we hold that, in the instant case, Ms. Foreman did not incorrectly fail to raise her hand when the court inquired as to possible bias against Manzanares because he was Hispanic.

In short, there was no failure to disclose by juror Foreman on voir dire. As the Eleventh Circuit said in *United States v. Kerr,* 778 F.2d 690, 694 (11th Cir. 1985), "we cannot put upon the jury the duty to respond to questions not posed."[3]

Judgment vacated and case remanded with directions that the district court reinstate the verdict of the first jury and the judgment previously entered thereon.

ENTERED FOR THE COURT,

Robert H. McWilliams
Senior Circuit Judge

---

[3]As indicated, Manzanares in the district court moved to strike the affidavits filed in support of Allen's motion for new trial. The court granted the motion in regard to Kathy Diamant's affidavit but denied it in regard to the other affidavits. In any event, we accept the record as thus made. However, it would appear that at least portions of the affidavits would be inadmissible under Fed. R. Evid. 606(b).

- 12 -