**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 26, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEJON RAMON WALDRON,

    Defendant - Appellant.

No. 19-4170
(D.C. No. 1:19-CV-00082-DB)
(D.C. No. 1:15-CR-00041-DB-1)
(D. Utah)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HOLMES**, **MATHESON**, and **EID**, Circuit Judges.
_____

Dejon Ramon Waldron, a federal prisoner appearing pro se, seeks a certificate of appealability ("COA") to challenge the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. *See* 28 U.S.C. § 2253(c)(1)(B) (requiring a COA to appeal an order denying a § 2255 motion). Exercising jurisdiction under 28 U.S.C. § 1291, we deny his request and dismiss this matter.[1]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Waldron is pro se, we construe his filings liberally, but we do not act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

# I. BACKGROUND

Law enforcement officers arrested Mr. Waldron following a parole search of an apartment, where he, his girlfriend, and her children resided. A jury convicted him of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) (Count 1); possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) (Count 3); possession by a felon of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count 4); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5); and possession by a felon of body armor, in violation of 18 U.S.C. §§ 931, 924(a)(7) (Count 7). The district court sentenced him to 204 months in prison. This court affirmed his convictions. *United States v. Waldron*, 756 F. App'x 789, 802 (10th Cir. 2018) (unpublished).

In the opinion affirming Mr. Waldron's convictions, this court said the following about the evidence from the search:

> In the course of the search, agents discovered a locked closet on a balcony. The closet contained a small Sentry safe and a large red duffel bag. Officers gained entry to the balcony closet and safe with a set of keys they found on Defendant's person. The duffel bag contained a Glock handgun, two magazines, a bullet-proof vest, and a rifle. The safe contained a baggy of methamphetamine, ammunition, multiple empty baggies, and a firearm cleaning kit.
>
> Other parts of the apartment contained contraband as well. Officers additionally found heroin and methamphetamine in the chest pocket of a pair of women's

2

overalls in the master bedroom closet, as well as rolled marijuana cigarettes and a scale disguised as a cell phone in the pockets of pink and purple coats in a hall closet. Agents also discovered a large quantity of marijuana in a laundry basket in a child's room.

*Id*. at 792. We further summarized the trial testimony of Officer Lucas Call, one of the officers who conducted the search:

> Call told the jury that the male clothing in the closet was meticulously organized. He testified that he located a male's dark jacket in the closet, and that he located a large amount of well-organized cash and two silver keys in separate pockets in that jacket. He identified those keys and photographs of the cash and other evidence, as well as a photograph of the closet. Cross-examination consisted of three questions, which confirmed that Call found money in the jacket and did not find drugs or identification in the jacket.

*Id*. at 793. We also noted that "[v]arious officers' testimony established that a set of keys possessed by Defendant at the time of the search opened the balcony closet and the safe." *Id*. We later recognized that Mr. Waldron challenged the "sufficiency of the evidence as to [his] dominion and control of the methamphetamine found in the master bedroom closet," but we declined to address this challenge because he did not adequately brief it. *Id*. at 801.

Mr. Waldron filed a § 2255 motion claiming (1) ineffective assistance of counsel, (2) actual innocence, and (3) inconsistent verdict. The district court denied relief and denied a COA.

3

## II. DISCUSSION

### A. *COA Requirement and Standard of Review*

Mr. Waldron may not appeal the district court's denial of his § 2255 motion without a COA. 28 U.S.C. § 2253(c)(1)(B); *see United States v. Gonzalez*, 596 F.3d 1228, 1241 (10th Cir. 2010). To obtain a COA, he must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and show "that reasonable jurists could debate whether . . . the petition[s] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).

### B. *Analysis*

As previously noted, Mr. Waldron sought habeas relief for (1) ineffective assistance of counsel, (2) actual innocence, and (3) inconsistent verdict. In his brief to this court, Mr. Waldron states that he raises the same issues here as he did in the district court. Aplt. Br. at 6.[2] But his brief does not seek or argue for a COA on the issues of actual innocence or inconsistent verdict. In addition to seeking a COA on most of his ineffective assistance of counsel issues, Mr. Waldron complains that the district court failed to address challenges to his convictions under 18 U.S.C. §§ 924(c)(1)(A) and 931, and that he should have received an evidentiary hearing.

---

[2] Mr. Waldron's combined brief and application for a COA is numbered differently in the upper right-hand corner and lower right-hand corner of each page. Our citations to this document are to the numbers in the upper right-hand corner.

### 1. **Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, a movant must show (1) constitutionally deficient performance that (2) resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). If the applicant cannot "show either deficient performance or sufficient prejudice," the ineffective assistance claim "necessarily fails." *Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010) (quotations omitted).

For constitutionally deficient performance, "the [movant] must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). A court considering such a claim must apply "a strong presumption" that counsel's representation was "within the wide range of reasonable . . . assistance." *Strickland*, 466 U.S. at 689.

For prejudice, the movant must show "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id*. at 687. An applicant may do this by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "[M]ere speculation is not sufficient to satisfy this burden." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011). "Instead, a reasonable probability is one sufficient to undermine confidence in the outcome." *Hooks*, 606 F.3d at 724 (quotations omitted).

As the district court summarized, Mr. Waldron alleged that his trial counsel failed to:

> (1) investigate certain fingerprint and DNA evidence in order to show that Mr. Waldron's DNA was not located on the contraband; (2) investigate the service records of the recording device used by police to interview Codefendant; (3) investigate the alleged anonymous tip received by Adult Probation & Parole; (4) investigate Codefendant's interview with police for coerced false statements; (5) interview and introduce certain witnesses that Mr. Waldron wished to call; (6) protect Mr. Waldron's right to a speedy and public trial; (7) investigate a hair follicle drug test showing that drugs were present in the residence prior to Mr. Waldron moving in; (8) investigate Mr. Waldron's bank records showing no suspicious activity; (9) research and raise objection to the application of 21 U.S.C. § 841(a); (10) research and raise objection to the application of 18 U.S.C. § 922; and (11) pursue a motion to suppress.

ROA, Vol. II at 362-63. The district court grouped these claims into six categories and found that Mr. Waldron had not established a Sixth Amendment ineffective assistance of counsel claim under *Strickland* as to all of them.

a. *Failure to investigate*

Addressing Mr. Waldron's claims concerning defense counsel's alleged failure to investigate certain evidence, the district court concluded that Mr. Waldron failed to establish either the ineffective assistance or prejudice elements of *Strickland*. It found that "the decision not to investigate the evidence at issue to be sound trial strategy under these particular circumstances," and "that Mr. Waldron has not demonstrated that investigating the evidence described in the petition would have changed the outcome of the trial." *Id*. at 364. The court devoted most of its analysis

6

to prejudice, pointing out that, under *Strickland*, "Mr. Waldron must show 'a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). It addressed the failure to investigate claims as follows:

> (1) <u>DNA and fingerprint evidence (Claim 1)</u> – "[T]he jury convicted Mr. Waldron without DNA or fingerprint evidence linking Mr. Waldron to the crime. Thus, even if additional testing had returned negative for Mr. Waldron's fingerprints and DNA, the evidence against Mr. Waldron at trial would not change and would still have sufficiently established Mr. Waldron's possession of the contraband for purposes of the jury's verdict." *Id*.

> (2) <u>Anonymous tip (Claim 3)</u> – "[E]ven if counsel were to investigate the tip and find that it was fabricated—as Mr. Waldron would have us believe—this ultimately would not have changed the fact that, under the terms of Mr. Waldron's parole agreement, his residence was subject to wholly suspicionless searches." *Id*. at 365.

> (3) <u>Hair follicle drug test (Claim 7)</u> – "Mr. Waldron has not shown that failing to investigate and introduce the hair follicle drug test at trial was a prejudicial error because, even if such a test demonstrated that drugs existed in the apartment prior to Mr. Waldron's release from jail, this does not alter the fact that the weight of the trial evidence showed that the particular drugs seized the day of the search were possessed by Mr. Waldron with intent to distribute." *Id*.

> (4) <u>Bank records (Claim 8)</u> – "[A] jury's consideration of Mr. Waldron's bank account would not change the fact that a significant amount of drugs were found in Mr. Waldron's apartment. Mr. Waldron has failed to show that a lack of suspicious deposits or withdrawals would have changed the jury's verdict." *Id*.

> (5) <u>Interview and introduce witnesses (Claim 5)</u> – "Mr. Waldron has not demonstrated that the additional witnesses he wished to introduce at trial—Codefendant,

7

Codefendant's children, Mr. Waldron's neighbors, and a car salesman—could have or would have rebutted the evidence showing possession of the contraband found in the residence." *Id*.

(6) Codefendant's interview (Claims 2 and 4) – "[T]o the extent that Mr. Waldron alleges that the police framed Mr. Waldron or threatened Codefendant into making false statements, Mr. Waldron has not demonstrated ineffectiveness of counsel because he has not provided any evidence supporting these conclusory accusations. Furthermore, Codefendant's allegedly false interview was not introduced as evidence at trial, and therefore was not prejudicial to the outcome of Mr. Waldron's case." *Id*. at 365-66 (citation omitted).

In his brief and application for a COA, Mr. Waldron does not address his anonymous tip claim (Claim 3) and only briefly addresses the others. As the district court explained, even with the DNA, fingerprint, bank record, and witness evidence Mr. Waldron hoped his counsel would have found and presented in court (Claims 1, 5, 7, and 8), none of it could overcome the trial evidence showing that Mr. Waldron had the keys to a closet and a safe in his apartment that contained the drugs and guns underlying his convictions. Although the record on appeal does not contain the trial transcript, we have reviewed the transcript posted to the district court docket (Dist. Ct. Docs. 177, 178) and concur with the district court. *See United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (recognizing a court may take judicial notice of docket information from another court); *United States v. Estep*, 760 F.2d 1060, 1063-64 (10th Cir. 1985) (approving judicial notice of a criminal trial transcript); Fed. R. Evid. 201(b)(2) (authorizing a court to "judicially notice a fact that . . . can be

8

accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

As to the Codefendant's interview (Claims 2 and 4), he asserts only that "[t]he police coerced perjured testimony and it went unchallenged." Aplt. Br. at 15. But as the district court pointed out, Mr. Waldron has not substantiated this allegation, and the prosecution did not introduce the interview at trial. ROA, Vol. II at 365-66.

Reasonable jurists would not debate the district court's denial of Mr. Waldron's ineffective assistance of counsel claims. We therefore do not grant a COA on any of them.

b. *Failure to protect speedy trial rights*

In its order denying Mr. Waldron's ineffective assistance claim regarding protection of speedy trial rights (Claim 6), the district court addressed the issue under the Speedy Trial Act ("STA") and under the Sixth Amendment. In his request for a COA, Mr. Waldron addresses only the former. *See* Aplt. Br. at 20-21.

He first argues that the superseding indictment was untimely filed under 18 U.S.C. § 3161(b), which provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." *See id.* at 20. He makes this argument for the first time here. "We generally do not consider issues raised for the first time on appeal." *United States v. Mora*, 293 F.3d 1213, 1218 (10th Cir. 2002). This argument otherwise lacks merit because "[t]here is nothing in either the statute or the cases

9

construing it to suggest that a superseding indictment must be filed within the [30-day] period allowed for the original indictment." *United States v. Wilks*, 629 F.2d 669, 673 (10th Cir. 1980); *see United States v. Peterson*, 945 F.3d 144, 156 (4th Cir. 2019) ("[W]e join every federal court to address the question and hold that a superseding indictment filed more than thirty days after an arrest does not violate Section 3161(b) so long as the original indictment was filed within the STA's thirty-day window.").

Mr. Waldron further complains about the "'ends of justice' continuances." Aplt. Br. at 20-21. The district court examined the three ends of justice continuances for prejudice, found none, and concluded that counsel was not ineffective. ROA, Vol. II at 367-68. Mr. Waldron fails to show to the contrary or that the district court's denial of his claim would be debatable among reasonable jurists. No COA is warranted.

c. *Failure to research statutes*

Mr. Waldron argues his counsel failed to research and challenge the statutes underlying his convictions—21 U.S.C. § 841(a) and 18 U.S.C. § 922(g) (Claims 9 and 10). The district court rejected Mr. Waldron's argument that § 841(a), which prohibits possession of a controlled substance "with intent to manufacture, distribute, or dispense," does not include intent to sell. *See United States v. Gay*, 774 F.2d 368, 372 (10th Cir. 1985) (equating "intent to distribute" with intent "to sell, deliver, or otherwise distribute"); *United States v. Johnson*, 495 F.2d 242, 244 (10th Cir. 1974) (referencing "intent to sell a controlled substance as required by 21 U.S.C.

10

§ 841(a)"). Based on this court's foregoing precedent, reasonable jurists would not debate the district court's interpretation of § 841(a). The district court also rejected Mr. Waldron's Commerce Clause challenge to § 922(g), again citing Tenth Circuit precedent. *See United States v. Urbano*, 563 F.3d 1150, 1154 (10th Cir. 2009). Apart from his challenge's lack of merit, Mr. Waldron presents no substantive argument in his brief. *See* Aplt. Br. at 22. He is not entitled to a COA on this issue.

        d. *Failure to file a suppression motion*

Mr. Waldron argues that his counsel should have moved to suppress the evidence because it was obtained in violation of the Fourth Amendment (Claim 11). The district court held there was no ineffective assistance. It explained:

> Mr. Waldron signed an agreement in connection with his parole in which he expressly consented to searches by parole officers of his person, property, residence, or personal effects with or without cause. (1:19-cv-82, Dkt. No. 5, Ex. A.) The evidence which Mr. Waldron would seek to suppress was all discovered in the course of a lawful search, consistent with that agreement.

ROA, Vol. II at 369.

Mr. Waldron's parole agreement with the Utah State Board of Pardons and Parole included the following:

> I know that I am subject to, and I will allow at any time, the search or seizure of my person, property, personal effects, place of residence, or vehicle by AP&P or a law enforcement officer. I understand that such a search may be with or without a warrant and with or without cause.

*Id*. at 319. This court has previously determined that the Utah law governing parole searches complies with the Fourth Amendment. *See United States v. Tucker*, 305 F.3d

11

1193, 1199 (10th Cir. 2002); *United States v. Lewis*, 71 F.3d 358, 362 (10th Cir. 1995). "Generally, a condition of parole that permits warrantless searches provides officers with the limited authority to enter and search a house where the parolee resides, even if others also reside there." *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012).

Mr. Waldron argues on appeal that law enforcement officers exceeded the scope of the search authorized in the parole agreement because they looked at his Codefendant's belongings, including women's clothing, before they found the evidence used against him. But the parole agreement authorized a search of his residence, and that is what the officers did. The trial transcript shows that officers searched in areas of the home subject to Mr. Waldron's sole or common control. *See* Dist. Ct. Docs. 177, 178; *United States v. Cantley*, 130 F.3d 1371, 1377 (10th Cir. 1997) (upholding parole search that was limited to "the common areas of the residence and the one bedroom [the defendant] had previously identified as his"). And the parties stipulated at trial that the search was "legal and lawful." Dist. Ct. Doc. 177 at 125. Any objection to a search of the Codefendant's personal effects must come from her. As the district court explained, Mr. Waldron lacked standing to make that objection. *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

## 2. **Failure to Address Statutes**

Mr. Waldron presented several arguments in his § 2255 motion on his actual innocence claim, including challenges to his convictions under 18 U.S.C. §§ 924(c)(1)(A) and 931. In his brief here, he does not seek a COA to appeal the denial of his actual

12

innocence claim. But in his discussion of his claim that counsel failed to research certain statutes (Claims 9 and 10), he contends the district court erred in "failing to make findings" regarding §§ 924(c)(1)(A) and 931. Although the district court did not specifically address these statutes when it denied his actual innocence claim, we deny a COA on this assertion of error because his arguments are so lacking in merit that no reasonable jurist could debate the district court's denial of his ineffective assistance and his actual innocence claims.

a. *Section 924(c)(1)(A)*

The jury convicted Mr. Waldron of Count 5 of the superseding indictment, which charged him under § 924(c)(1)(A). That provision states:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime— . . . .

The statute goes on to list different mandatory minimum sentences depending on the type of firearm used, the manner of the firearm's involvement, and whether the conviction involves a single, first-time offense. *See* 18 U.S.C. §§ 924(c)(1)(A), (B), and (C).

In his § 2255 motion, Mr. Waldron argued that his § 924(c)(1)(A) charge should be dismissed under the "except" clause of the statute because "a greater

minimum sentence was provided by all of the other included counts, which provided a minimum sentence of 144 months for counts 1, 3, 4, and 7." ROA, Vol. II at 57.

The Supreme Court rejected this argument in *Abbott v. United States*, 562 U.S. 8, 13 (2010):

> We hold, in accord with the courts below, and in line with the majority of the Courts of Appeals, that a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction. Under the "except" clause as we comprehend it, a § 924(c) offender is not subject to stacked sentences for violating § 924(c). If he possessed, brandished, and discharged a gun, the mandatory penalty would be 10 years, not 22. He is, however, subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum.

In *United States v. Villa*, 589 F.3d 1334, 1343 (10th Cir. 2009), we held similarly: "Today we join the majority of those courts and hold that the prefatory clause to § 924(c) refers only to a minimum sentence provided by § 924(c) or any other statutory provision that proscribes the conduct set forth in § 924(c)." Mr. Waldron's challenge plainly fails and does not deserve a COA.[3]

---

[3] He alternatively argued in his § 2255 motion that "this count must be dismissed because [he] is actually innocent of this charge" because his Codefendant confessed to sole knowledge and possession of the contraband under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g) and because there was no evidence he knew of the contraband other than his Codefendant's perjured statement. ROA, Vol. II at 57-58. But in rejecting his actual innocence claim, the district court said "he ha[d] not provided the court with any new evidence that was not presented at trial, as required by" *United States v. Cervini*, 379 F.3d 987, 991 (10th Cir. 2004). *Id.* at 370. Moreover, as noted above, Mr. Waldron does not argue actual innocence in his brief to this court.

b. *Section 931*

The jury convicted Mr. Waldron of Count 7 of the superseding indictment, which charged him under 18 U.S.C. § 931. The statute makes it "unlawful for a person to purchase, own, or possess body armor, if that person has been convicted of a felony that is a crime of violence (as defined in section 16)." 18 U.S.C. § 931(a)(1). Section 16 defines a crime of violence as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id*. § 16.

Mr. Waldron asserted in his § 2255 motion that "[t]he Supreme Court recently struck down 18 U.S.C. § 16 as unconstitutionally vague in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)." ROA, Vol. II at 59. But the Supreme Court invalidated § 16(b), the residual clause, leaving § 16(a) intact. *See United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018). And the presentence report listed Mr. Waldron's prior convictions for aggravated robbery and aggravated assault, which he did not contest as satisfying the "crime of violence" element under 18 U.S.C. §§ 931 and 16(a).

Mr. Waldron's argument again lacks any merit and does not warrant a COA.[4]

---

[4] Mr. Waldron also argued in district court that he is actually innocent of violating § 931. This argument fails here for the same reasons stated above as to § 924(c)(1)(A).

15

3. **Evidentiary Hearing**

Mr. Waldron argues that he should have received an evidentiary hearing in district court. "We review the district court's refusal to hold an evidentiary hearing for an abuse of discretion." *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012) (quotations omitted).

In his § 2255 motion, Mr. Waldron posited that "[a]n evidentiary hearing is requested as being necessary to ascertain whether counsel should have requested a copy of the alleged anonymous tip to assert its actual existance [sic] and specification to support the required reasonable suspicion to warrant a full scale raid of Mrs. Moores [sic] home." ROA, Vol. II at 23.

Mr. Waldron has not argued for a COA on the issue of whether his counsel was ineffective for failure to investigate the anonymous tip. In that regard, his request for an evidentiary hearing is moot. To the extent he is making a broader request for an evidentiary hearing in his appellate brief, he did not preserve the issue in district court, and his only argument is that "[s]ome of these claims involve ultimate facts requiring an evidentiary hearing to get to the heart of the matter." Aplt. Br. at 12. He does not identify which claims merit an evidentiary hearing, and he does not explain how any of his claims would benefit from one. We see no abuse of discretion in the district court's not conducting an evidentiary hearing.

## III.  **CONCLUSION**

We deny a COA and dismiss this matter.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge